**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Joseph CALHOUN, Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John CHILDRESS, Defendant-Appellant.**

**No. 12244–12246.**

United States Court of Appeals
Seventh Circuit.
July 29, 1958.

Howard T. Savage, Frank W. Oliver, Chicago, Ill., for appellants.

Robert Tieken, U. S. Atty., Albert F. Manion, John Peter Lulinski, Asst. U. S. Attys., Chicago, Ill., for appellee.

Before FINNEGAN, SCHNACKEN-BERG and PARKINSON, Circuit Judges.

FINNEGAN, Circuit Judge.

The cold record as filed in our Court, on appeal from convictions in criminal cases, supplies the data for our opinions. Salvaging convictions for the government on the basis of margin evidence and conjecture is outside our reviewing function. These two appeals, by Calhoun and Childress, respectively are prime examples of narcotic trafficking, abhorrent to all decent citizens, but improperly handled at the accusatory and trial level when these defendants were tried jointly by the district judge sitting without a jury. These prosecutions were grounded on a five count indictment[1] and each defendant

---

1. Count One. "The April 1957 Grand Jury charges:

"That on or about March 23, 1957, at Chicago, Illinois, in the Northern District of Illinois, Eastern Division, Joseph Calhoun, John Childress alias 'Fuzzy', and Barbara Villegas, defendants herein, did unlawfully and willfully sell to Isabelle Thomas, for the sum of $60.00, a quantity of a certain narcotic drug, to wit, 124 grains of heroin hydrochloride, which said heroin hydrochloride sold by the defendants, as aforesaid, was not then and there in the original stamped package nor from the original stamped package; in violation of Section 4704(a), Internal Revenue Code of 1954, as amended by the Narcotic Control Act of 1956."

Count Two. "The April 1957 Grand Jury further charges:

"That on or about March 26, 1957, at Chicago, Illinois, in the Northern District of Illinois, Eastern Division, Joseph Calhoun and Barbara Villegas, defendants herein, did unlawfully and willfully sell to Isabelle Thomas, for the sum of $50.00, a quantity of a certain narcotic drug, to wit, 107 grains of heroin hydrochloride, which said heroin hydrochloride

sold by the defendants, as aforesaid, was not then and there in the original stamped package nor from the original stamped package; in violation of Section 4704(a), Internal Revenue Code of 1954, as amended by the Narcotic Control Act of 1956."

Count Three. "The April 1957 Grand Jury further charges:

"That on or about March 29, 1957, at Chicago, Illinois, in the Northern District of Illinois, Eastern Division, Joseph Calhoun and Barbara Villegas, defendants herein, did unlawfully and willfully sell to Isabelle Thomas, for the sum of $50.00, a quantity of a certain narcotic drug, to wit, 135 grains of heroin hydrochloride, which said heroin hydrochloride sold by the defendants, as aforesaid, was not then and there in the original stamped package nor from the original stamped package; in violation of Section 4704(a), Internal Revenue Code of 1954, as amended by the Narcotic Control Act of 1956."

Count Four. "The April 1957 Grand Jury further charges:

"That on or about April 9, 1957 at Chicago, Illinois, in the Northern District of Illinois, Eastern Division, Joseph Cal-

was found guilty under the counts in which he was named. The relevant statutory provisions on which that indictment is bottomed are set out in the margin[2] and various evidentiary aspects of the record follow.

houn and Barbara Villegas, defendants herein, did unlawfully and willfully sell to Isabelle Thomas, for the sum of $50.00, a quantity of a certain narcotic drug to wit, 127 grains of heroin hydrochloride, which said heroin hydrochloride sold by the defendants, as aforesaid, was not then and there in the original stamped package nor from the original stamped package; in violation of Section 4704(a), Internal Revenue Code of 1954, as amended by the Narcotic Control Act of 1956."

Count Five. "The April 1957 Grand Jury further charges:

"That commencing on or about March 22, 1957, and continuing to on or about April 11, 1957, at Chicago, Illinois, in the Northern District of Illinois, Eastern Division, Joseph Calhoun, John Childress alias 'Fuzzy', and Barbara Villegas, defendants herein, did unlawfully, willfully and knowingly conspire to conceal, sell and to facilitate the transportation, concealment and sale of narcotic drugs, to wit heroin hydrochloride, after importation into the United States contrary to law, knowing the same to have been imported, and in furtherance of such conspiracy the said defendants did and performed the following overt acts at Chicago, Illinois:"

#### Overt Acts

"1. On or about March 22, 1957 Joseph Calhoun had a telephone conversation with Isabelle Thomas.

"2. On or about March 22, 1957, John Childress alias 'Fuzzy' met and had a conversation with Isabelle Thomas at 1418 West Madison Street.

"3. On or about March 23, 1957, Barbara Villegas did sell to Isabelle Thomas 124 grains of heroin hydrochloride for the sum of $60.00.

"4. On or about March 26, 1957, Barbara Villegas did sell to Isabelle Thomas 170 grains of heroin hydrochloride for the sum of $50.00.

"5. On or about March 29, 1957, Barbara Villegas did meet and have a conversation with Isabelle Thomas in the Lighthouse Cafe at the intersection of Ashland and Ogden Avenues and at such time and place did sell to Isabelle Thomas for the sum of $50.00 135 grains of heroin hydrochloride.

"6. On or about April 9, 1957, Barbara Villegas did make a telephone call to Isabelle Thomas.

"7. On or about April 11, 1957, Barbara Villegas did have a telephone conversation with Isabelle Thomas; in violation of Section 174, Title 21, United States Code, as amended by the Narcotic Control Act of 1956."

2. Section 4704(a), I.R.C.1954, 68A Stat. 550, 26 U.S.C. § 4704(a), amended by the Narcotic Control Act of 1956, in relevant part provides: " * * * It shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession the same may be found. * * "

Section 174, Title 21 United States Code Annotated, as amended by the Narcotic Control Act of 1956, 70 Stat. 570, and in the part pertinent here provides:

"Sec. 105. Importation, Etc., Of Narcotic Drugs.

"Section 2(c) of the Narcotic Drugs Import and Export Act, as amended (U.S.C., title 21, sec. 174), is amended to read as follows:

"(c) Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned not less than ten or more than forty years and, in addition, may be fined not more than $20,000.

"Whenever on trial for a violation of this subsection the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.

"For provision relating to sentencing, probation, etc., see section 7237(d) of the Internal Revenue Code of 1954."

Isabelle Thomas (government "special employee") a narcotic addict for thirty years who had served a sentence in a Federal Penitentiary for possession of narcotic drugs beginning in 1952, and who used about three shots of narcotics a day in March of 1957, met Federal Agent John Stenhouse by chance upon a public street. This meeting occurred on or about March 20, 1957 and at that time Isabelle Thomas surrendered to Stenhouse a quantity of narcotics which she had upon her person. The Agent did not place her under arrest. On this date she visited the Bureau of Narcotics in the City of Chicago with Stenhouse and other agents. On March 22, 1957 she again visited the Bureau of Narcotics and in the presence of Stenhouse dialed a telephone number, Seeley 3–9116. She heard a voice on the other end of the line which she testified that she recognized as that of defendant Joseph Calhoun, and she spoke into the telephone stating that she wanted to talk about merchandise and the voice said that he would send "Fuzzy" to see her. Agent Stenhouse heard the voice and Isabelle Thomas's conversation at that time but could not identify the voice as that of Joseph Calhoun on the telephone.

It is stipulated this telephone, SE 3–9116, was unlisted, and was registered to Joseph Calhoun at the Traveler's Hotel. Thomas testified she identified herself as "a big stout white girl who used to pick up for Nina", and inquired about "merchandise." Calhoun said he understood what she was talking about, and would send "Fuzzy" around to see her. The fact of the call, the number called, and the conversation were corroborated by Stenhouse. Further, Stenhouse testified that in later telephone conversations with defendant Calhoun the voice was similar to the voice heard on this occasion.

Isabelle Thomas had answered and heard the voice of defendant Calhoun only twice before and never before over the telephone. She had known him over a period of three years from seeing him on the street, and the first occasion on which she heard his voice, (the date she could not remember) they had merely exchanged salutations on the street and the second occasion, the date which she fixed on cross examination about three months after the first conversation and again upon the street, and later as the day before the aforesaid phone conversation, she asked Calhoun to see him and he said, "I will."

Immediately after this conversation Isabelle Thomas either took public transportation to her home in a hotel as she testified or was transported there by agent Stenhouse, as he testified.

About three and one half or four hours after the telephone conversation according to the testimony of Isabelle Thomas, the defendant John Childress appeared at the desk in the lobby of the hotel in which Isabelle Thomas lived and asked for her; that defendant Childress told her their stuff was the best on the West side and cost thirty dollars a fourth, and that he would send a girl around to see her the next day. Thomas also testified that Childress told her that "Joe" had sent him. Agent Stenhouse testified that he saw Isabelle Thomas talk to Childress on March 22, a few minutes on the street near her hotel.

Childress admitted he was known as "Fuzzy." Thomas testified he told her he was Fuzzy; that Joe had sent him; and that they then discussed the price and quality of heroin. Fuzzy further stated he would send a girl around to see her. Defendant Childress judicially admitted the fact of this meeting (which was corroborated by surveiling narcotic agents), but claimed he was there as a cab driver, though he lacked both a driver's or chauffeur's license at that time.

The following morning, March 23, 1957, Barbara Villegas, who was then a stranger to special employee Thomas, approached the latter in the King's Men's Grill, and stated: "You're Isabelle aren't you? Fuzzy sent me. Are you ready to do business?" Thomas and Villegas then agreed to meet at Goodwill Industries at 10:00 A. M. the same day to consummate the sale. This conversation was admit-

ted by the trial court subject to "Rule 43 [28 U.S.C.]," and later stricken. No other witnesses saw this meeting or corroborated the conversation.

That morning Thomas had received a telephone call and returned to the restaurant where she met Stenhouse who searched her outer garments and gave her sixty dollars. She then went to a building housing the Goodwill Industries and received two packages of heroin from Barbara Villegas. Agent Stenhouse had followed her to Goodwill Industries and had seen the hands of Isabelle Thomas and Barbara Villegas meet, and federal agent Charles M. Adams had seen Isabelle follow Barbara Villegas into the Goodwill Industries building. Later Thomas handed Stenhouse a package (apparently consisting of two parcels) and he, in turn, passed it to Agent Adams. Counsels' stipulation established that the contents consisted of 62.5 grains and 61.5 grains heroin hydrochloride. Isabelle Thomas testified that she purchased narcotics from Villegas in another restaurant on March 26, 1957 and that on that date she (Thomas) had telephoned Seeley 3–9116 in the presence of Stenhouse, who corroborated this telephone conversation, and asked Calhoun, testifying she recognized his voice, about merchandise and that he said "Merchandise? What merchandise? I don't know what you are talking about," and hung up the telephone. She testified that on March 29, 1957 she met Villegas at still another and different restaurant. After talking with Stenhouse and receiving money from him she purchased narcotics from Villegas. She testified that on April 9, she reached Villegas by phone at the Seeley 3–9116 number and had a conversation with her, met her, and bought narcotics from her. She further testified that on April 11 or 12th she called Villegas who agreed to meet her but there is no testimony that any meeting took place. Isabelle Thomas had no contact with defendant Calhoun between March 21 and April 11, 1957 except the alleged phone calls.

On March 26 and March 29, 1957, Villegas delivered additional quantities of heroin to special employee Thomas. These meetings and deliveries were observed and corroborated by narcotic agents. After each of such deliveries, Villegas was observed by agents to meet the defendant Childress and engage him in brief conversation.

On the occasion of the meeting of March 29, 1957, with Villegas, special employee Thomas referred to her telephone call to defendant Calhoun. Thomas said she was sorry she had called and made him angry. Villegas replied that Joe wasn't angry, but that he was afraid the phone was tapped. Villegas further stated Joe did not want Thomas to call him in the future. Thomas was wearing a miniphon wire recorder during this conversation, and the wire recording, plus a tape-recorded transmission, were offered in evidence as Government's Exhibits 10 and 11, respectively. Her testimony as to the conversation, together with the recordings, were admitted into the record under "Rule 43" by the trial court, and later stricken.

Federal Agent Robert M. Shroeder testified that he observed the meetings between Isabelle Thomas and Barbara Villegas on March 26, March 29, and April 9 and saw Villegas give Thomas a package on March 26. He also testified that on March 29, after her meeting with Isabelle Thomas, Barbara Villegas met Childress at Ogden and Madison, carried on a brief conversation and went into the building at 28–30 North Ogden avenue and that he knew Childress lived at 30 North Ogden. He did not observe them hand one another anything.

On April 9, 1957, Thomas telephoned SE 3–9116, and asked for Joe. She stated Barbara Villegas came to the phone, said "Oh, it is you." Villegas then asked for Thomas' number and said she would call right back. Villegas then called Thomas back, and said she had not been able to talk to Joe about the deal Thomas wanted. Thomas and Villegas then made arrangements to meet at Madison and

Halsted Streets, to respectively buy and sell narcotics, and shortly thereafter did so meet, Thomas receiving an additional package of heroin from Villegas. These occurrences, including the conversation, were corroborated by Stenhouse, and were admitted pursuant to "Rule 43." The conversations were later stricken.

On April 11, 1957, Thomas again called SE 3-9116, and had a conversation with Villegas relative to further purchase of narcotics. This conversation was also corroborated by Agent Stenhouse; was also admitted pursuant to "Rule 43" and was also stricken.

Before the trial the death of Barbara Villegas was suggested and the cause dismissed against her. During the course of the trial the witness Isabelle Thomas testified that the telephone conversation with Calhoun occurred on April 26. She also testified that the conversations between herself and defendant Childress at her hotel took place on April 26. She testified that her first meeting with Barbara Villegas was on April 22, 1957, and she testified that her transaction with Barbara Villegas at Goodwill Industries took place on April 28 and that her second telephone conversation with defendant Calhoun took place on April 29. The trial judge questioned her about the discrepancies in her testimony as to the dates of these transactions and upon her insistence that they happened in April, the Court called her as the Court's witness over the objections of the defendant. The government had stated that they were not surprised by the witness and that she was not hostile, and after stating that the witness was not truthful and that what she might say might be of some help to the Court, whether the Court believed her or not, and that he, the Trial Judge suspected the witness of deliberately changing the dates so as to make her testimony invalid. Then the Court proceeded to question her concerning discrepancies in her testimony, and the witness again insisted that the conversations occurred in April. The Government then impeached the witness with a written statement signed by her and she changed the dates back to March.

During the course of the trial, Isabelle Thomas testified that she knew both the defendant Childress and the defendant Calhoun, and when asked to step from the stand and identify the defendants by touching them, she identified the defendant John Childress as Joseph Calhoun and when this was brought to her attention by the Court and counsel she then changed her identifications, and later denied the fact that she made the incorrect identifications. The witness Thomas testified that on her first visit to the Bureau of Narcotics she had not been shown any pictures. Stenhouse testified that she may have been shown pictures there by other agents.

Isabelle Thomas also testified that she had not received any compensation money or other things for her efforts on behalf of the Government in this case. Agent Stenhouse testified that she had received a reward of money from the Government for her assistance in the case and that she had received a money reward from Washington, that he had provided her with taxicab and transportation fare, meals and telephone calls. The testimony of Isabelle Thomas as to the telephone conversation with Joseph Calhoun was received in evidence by the court only as to the defendant Calhoun. The Court ruling that if there was evidence of a conspiracy prior to that conversation the Government might reoffer the testimony as to Childress. Her testimony concerning her conversation with Childress on March 22, at her hotel was objected to by Calhoun but the objection was overruled by the Court subject to being stricken. The testimony of Isabelle Thomas concerning conversations with Barbara Villegas on April 22 or March 23 as the date was later fixed, was objected to and the trial judge overruled the objection but later struck out the testimony but admitted it into the record under "Civil Practice Rule 43," observing that further conversations between Isabelle Thomas and Barbara Villegas would

be handled in the same way. Her testimony as to conversations with Barbara on March 29, April 9, and April 11, or 12 were objected to by the defendants and the objection was sustained but admitted [in] to the record under Rule 43. An objection was made to the testimony of Stenhouse concerning the telephone conversations he heard that Isabelle Thomas had on March 22, 1957 after dialing Seeley 3-9116. The trial judge took this testimony subject to objection, stating he would later decide whether to admit it or let it stand under Rule 43. The defendant objected to the testimony of Stenhouse as to the telephone conversation allegedly had between Isabelle Thomas and Joseph Calhoun on March 26, 1957 and the objection was sustained yet the testimony was allowed to stand under Rule 43 for the record. The Court gave the same treatment to testimony of Stenhouse concerning conversations he heard between Isabelle Thomas and a voice answering Barbara on April 9, 1957. All of the testimony of the conversation between Isabelle Thomas and Barbara Villegas was stricken.

Rosemary Riles called by the defendant Calhoun testified that she had seen Isabelle Thomas in April of 1957 and that Thomas had said that she was in trouble but that if she could get out of it, it didn't make any difference whom she took with her; that she wouldn't be able to recognize Joseph Calhoun but she had been shown pictures of him when she was locked up.

Defendant John Childress testified that he had seen Isabelle Thomas as a passenger in a taxi cab which he drove in 1956, and that he and Isabelle Thomas had an argument about the fare and that she had been taken to a police station where his fare was paid. He testified that about a month before his arrest on April 11, 1957 he was employed as a taxi cab driver for the Veterans Livery Cab at 1836 W. Lake St., and had answered a call at his cab stand to go to her hotel but did not know who the person was who had called; that he got her name from the cab dispatcher and when he arrived at the hotel recognized her as the person whom he argued with previously and that he refused to drive her and she followed him out of the hotel. He denied the conversation attributed to him by Isabelle Thomas and denied that Joseph Calhoun had sent him and denied that he had told Isabelle Thomas that he would send anyone to see her. He testified that he knew Barbara Villegas who lived in the building adjoining the one in which he resided at 30 North Ogden and would speak to her practically every day as she entered and left the building. He testified that he had no knowledge of the conversations or transactions between Barbara Villegas and Isabelle Thomas and that he neither sold drugs nor conspired with reference to drugs as charged in the indictment, and that he was known as "Fuzzy"; that he knew Joseph Calhoun.

Defendant Calhoun denied the charges in the indictment and testified that he did not know Isabelle Thomas and could not recall having seen her previous to her testimony at the trial. He denied that he had any telephone conversation with her on March 22, 1957 and stated that on that date he was manager of the Travelers Hotel and that the telephone number was Seeley 3-9116. The telephone was located in the lobby of the hotel and was a pay telephone. It was the only telephone in the building and anyone who passed it would answer it when it rang. He testified that he knew John Childress and Barbara Villegas for a long time and that Villegas was a frequent visitor to the hotel where her cousin Georgia Knight lived. Isabelle Thomas, in rebuttal, testified that Rosemary Riles asked her to go easy on Calhoun and had said that Joe had sent her and that she had not ridden in Childress' taxi cab nor had an argument with him in 1956. She testified that she frequently used the Veteran's Livery service and knew its address and phone number. She also testified that at the time Rosemary Riles came to see her she had a conversation with Calhoun over the telephone and told him that Rosemary would tell him

what she had decided. Joseph Calhoun, defendant, denied the aforementioned conversations and denied that he sent Rosemary Riles to talk to Isabelle Thomas.

On the date of arrest, April 15, 1957, defendant Calhoun on interrogation by Stenhouse denied actually handling any narcotics, but remained silent when advised the present arrest was on a conspiracy charge. Calhoun told the agent "he would think about turning his connection, but that the last time he had done so it had gotten all over the street, and that he would take some time before he decided to do that again." At the time of his arrest, defendant Calhoun had in his possession a Traveler's Hotel card, bearing the number SE 3–9116, on which was penciled the name "Barbara Villegas."

After the arrest of defendant Calhoun in August, 1957, and before trial, Rosemary Riles talked to Thomas and told her Joe had sent her to talk to Thomas about the case, and that Joe had heard Thomas had had "a wire around your neck and you had some kind of conversation recorded." Riles further stated to Thomas, "Well, if you would say that you don't know him and you could just identify him from pictures it would make it easier on him." Riles then made a telephone call and put Thomas on the phone. Thomas testified she recognized the voice as that of Calhoun. Calhoun stated: "Do you know who this is?", to which Thomas replied, "Yes, it's Joe." Calhoun then asked if "Boots" had talked to Thomas and asked what Thomas had decided. Thomas replied she had talked to Riles, alias "Boots", and that Boots would tell him what she, Thomas, had decided. This testimony was offered on rebuttal after the defendant Calhoun had called Rosemary Riles as his witness to testify to this conversation.

Also on rebuttal, Thomas testified Childress had approached her after she had testified during the Government's case in chief, and had asked her to sign a statement that she was lying, because it would help him a lot and because "he wouldn't like to get any time."

The trial judge overruled motions of both defendants for acquittal which had been made at the close of the Government's case and taken under advisement, stating that Isabelle Thomas was an unwilling witness, had deliberately identified the wrong person in the court room so as to deliberately confuse the issues, had deliberately erred in her dates so as to cast reflection on her testimony, and that he, the district judge was convinced that defendant Calhoun "is carrying on and conducting this business" and that he conspired with the other two defendants. The court also said that he believed the defendant Calhoun was the "operator behind the scenes."

■ Our detailing of the facts is aimed at showing how much the conspiracy count influenced the reception of evidence in the district court. But that count, number 5, charging conspiracy was fatally defective for failing to follow 21 U.S.C.A. § 174. Perhaps this reversible error is best described in the government's brief, where it is frankly stated and, the defect confessed: "The inclusion of either 'so' or 'unlawfully,' or both immediately prior to the word 'imported' in the phrase 'knowing the same to have been imported' *would have been* sufficient to render the indictment free of the challenged defect. Patently, one or more of such qualifying adverbs *should have been included* and their *absence* is an obvious *mechanical* error." (Italics added.) The core of this reversible error is the omission, not the class of omission, U.S.Const. Amend. VI. Rule 7, Federal Rules of Criminal Procedure, 18 U.S.C. is unavailing in this situation and the failure to challenge the indictment at the trial level is unimportant, on this record, because count 5 omitted an element of the offense. Rule 12(b) (2), Federal Rules of Criminal Procedure, 18 U.S.C. We are reluctant to reverse a judgment on account of this defect, but it must be done where there is more than an obvious technicality, and one which cannot be disregarded under Rule

52(a), Federal Rules of Criminal Procedure, 18 U.S.C., as a "harmless error." United States v. Manuszak, 3 Cir., 1956, 234 F.2d 421.

█ Striking down the Fifth Count necessarily cuts ground from under evidence received below on the conspiracy theory and leaves little other evidence in support of the verdicts. Just recently, June 23, 1958, United States v. Washington, 7 Cir., 1958, 253 F.2d 913, cited to us by the government in these current appeals, was reversed by the Supreme Court "because of the insufficiency of the evidence." In passing we remark that Washington is also a narcotic case where again enforcement agents listened at telephone receivers and voice identification was critical.

The judgments in cases No. 12244 and 12246, respectively, are each reversed.

Judgments reversed.