**UNITED STATES of America,**
**Appellee,**

v.

**Joseph Wesley ROACH, also known as**
**Joseph W. Rodgers, Appellant.**

No. 14333.

United States Court of Appeals
Third Circuit.

Argued June 18, 1963.

Decided Aug. 1, 1963.

**2**

Leon H. Kline, Philadelphia, Pa., for appellant.

Thomas F. Gilson, Asst. U. S. Atty., Philadelphia, Pa. (Drew J. T. O'Keefe, U. S. Atty., J. Shane Creamer, Edmund E. DePaul, Asst. U. S. Attys., Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and STALEY and FORMAN, Circuit Judges.

FORMAN, Circuit Judge.

Joseph A. Roach is here appealing from his conviction in the United States District Court for the Eastern District of Pennsylvania [1] on a four count indictment to which he had pleaded not guilty to each count. Count I charged him with entering a federally insured saving and loan association with intent to commit larceny in violation of 18 U.S.C. § 2113 (a).[2] Count II charged him with taking, with intent to steal, currency in the custody of that savings and loan association in violation of 18 U.S.C. § 2113(b).[3] Count III charged him with possession and concealment of a sum of money knowing it to have been "taken" from that savings and loan association, in violation of 18 U.S.C. § 2113(c).[4] Count IV charged him with putting in jeopardy the lives of two tellers in the savings and loan association by the use of a gun, while committing the offenses charged in Counts I and II, in violation of 18 U.S.C. § 2113(d).[5]

1. Trial was before Judge Luther L. Bohanon, sitting by designation, and a jury.

2. The nature of the errors charged requires a careful scrutiny of the actual indictment which is set out by counts below and in notes 3, 4 and 5 infra.

"COUNT I

"THE GRAND JURY CHARGES:

"That on or about October 18, 1962, at Philadelphia, in the Eastern District of Pennsylvania, JOSEPH WESLEY ROACH, a/k/a Joseph W. Rodgers, did knowingly and unlawfully enter the East Girard Savings and Loan Association, 7917 Ogontz Avenue, Philadelphia, Pennsylvania, with intent to commit larceny; the deposits of said East Girard Savings and Loan Association being insured by the Federal Savings and Loan Insurance Corporation, Certificate No. 700.

"In violation of Title 18, U.S.C., § 2113 (a)."

3. "COUNT II

"THE GRAND JURY FURTHER CHARGES:

"That on or about October 18, 1962, at Philadelphia, in the Eastern District of Pennsylvania, JOSEPH WESLEY ROACH, a/k/a Joseph W. Rodgers, did knowingly and unlawfully take and carry away, with intent to steal, the sum of $8,241.00, lawful currency of the United States, belonging to and in the care, custody, control,

management, and possession of the East Girard Savings and Loan Association, 7917 Ogontz Avenue, Philadelphia, Pennsylvania, whose deposits are insured by the Federal Savings and Loan Insurance Corporation, Certificate No. 700.

"In violation of Title 18, U.S.C. § 2113 (b)."

4. "COUNT III

"THE GRAND JURY FURTHER CHARGES:

"That on or about October 18, 1962, at Philadelphia, in the Eastern District of Pennsylvania, JOSEPH WESLEY ROACH, a/k/a Joseph W. Rodgers, did knowingly and unlawfully possess and conceal the sum of $8,241.00, lawful currency of the United States, knowing the same to have been taken from the East Girard Savings and Loan Association, 7917 Ogontz Avenue, Philadelphia, Pennsylvania, whose deposits are insured by the Federal Savings and Loan Insurance Corporation, Certificate No. 700.

"In violation of Title 18, U.S.C. § 2113 (c)."

5. "COUNT IV

"THE GRAND JURY FURTHER CHARGES:

"That on or about October 18, 1962, at Philadelphia, in the Eastern District of Pennsylvania, JOSEPH WESLEY ROACH, a/k/a Joseph W. Rodgers, did knowingly and unlawfully put in jeopardy by the

The evidence adduced at the trial disclosed that on October 18, 1962, at about noon, a masked man entered the office of the East Girard Savings and Loan Association, at 7917 Ogontz Avenue, Philadelphia, Pennsylvania, the deposits of which were at the time insured by the Federal Savings and Loan Insurance Corporation whereby it was a "savings and loan association" as defined in 18 U.S.C. § 2113(g). He approached the counter and pointing a gun at Mrs. Rose Familant, a teller, told her to lie down and he would not hurt her. He called the manager, John K. Potter, out of an adjoining room and directed him to lie down on the floor near Mrs. Familant. The intruder then helped himself to cash from the counter cash drawers. He scooped the money into a paper bag he had brought with him and made his getaway. After he left, a check of the cash disclosed that the sum of $8,241 had been taken.

Neither of the Association's employees were able to make a positive identification of the appellant at his trial.

As a means of identifying currency in the event of a holdup the Association had taken the precaution to list the serial numbers of certain bills in the tellers' cash drawers. Over eighty of such bills were among those taken. Tracing them led the authorities to the appellant in whose possession five were found, 13 others were shown to have been transferred by him to a Western Union office and three others were located at a post office in two envelopes which he had addressed to himself. He was apprehended some four days after the robbery. The Government offered other circumstantial evidence designed to inculpate him in the crime.

During the trial he took the stand in his defense and offered evidence to show that he was elsewhere than at the scene of the robbery on October 18, 1962. He explained the possession of the marked bills with a statement that he had won them at a race track.

The jury convicted him on all four counts of the indictment. Motions for acquittal were made and denied at the conclusion of the Government's and defendant's cases. A motion for a new trial was also denied.

The trial judge sentenced the appellant to ten, five, five and ten years respectively on Counts I through IV, to run consecutively, making an aggregate sentence of thirty years.

Three of the errors that the appellant urges are conceded by the Government, namely:

(1) that the pyramiding of the sentences is invalid under Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed. 2d 370 (1957) and Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed. 2d 407 (1959);

█ (2) that Count III of the indictment did not charge appellant with a crime. It merely alleged that he knowingly and unlawfully possessed and concealed currency of the United States knowing the same to have been *taken* from the East Girard Savings and Loan Association in violation of 18 U.S.C. §

use of a dangerous weapon, to wit: a gun, the lives of John K. Potter and Rose Familant, employees at East Girard Savings and Loan Association, 7917 Ogontz Avenue, Philadelphia, Pennsylvania, among others, while committing an offense in violation of Title 18, U.S.C., § 2113(a), § 2113(b), to wit:

"1. Entering the East Girard Savings and Loan Association, 7917 Ogontz Avenue, Philadelphia, Pennsylvania, with intent to commit larceny.

"2. Taking and carrying away, with intent to steal, the sum of $8,241.00, lawful currency of the United States, belonging to and in the care, custody, control, management, and possession of the East Girard Savings and Loan Association, 7917 Ogontz Avenue, Philadelphia, Pennsylvania.

The deposits of the said East Girard Savings and Loan Association being insured by the Federal Savings and Loan Insurance Corporation, Certificate No. 700.

"In violation of Title 18, U.S.C., § 2113 (d)."

2113(c).[6] It fails to specify how the currency was "taken." One of the essential elements of § 2113(c)—knowledge that the property was "taken * * * in violation of subsection (b) [6a] of [§ 2113]", i. e., stolen—is omitted. The omission is fatal;

▮ (3) that the District Court erred in instructing the jury as follows:

"In Count Four of the indictment in this case the Government charges whoever in committing or attempting to commit, any of the offenses charged in Count One or Count Two or Count Three, as heretofore outlined to you, *assaults any person* or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be guilty of an offense against the United States and punishable as provided by law." (Emphasis supplied.)

However, Count IV of the indictment (supra, note 5) only charged the appellant with "putting in jeopardy" the Association's employees. It did not include the allegation of "assault" as the Trial Judge charged.[7] This is error under Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1961), and so clear that appellant is not precluded from raising it here notwithstanding that he failed to object to that charge below.[8]

Consequently the conviction on Count III must be reversed and that Count dismissed. The conviction on Count IV must also be reversed but a new trial on that Count will be ordered.

Appellant, however, contends for more than a new trial on Count IV. He urges that a judgment of acquittal should be ordered on the ground that there was an absence of proof of one of the necessary elements of § 2113(d), on which Count IV is based, i. e., that the accused "puts in jeopardy the life of a person by the use of a dangerous weapon." The appellant submits that the presence of fear alone on the part of the victim is not enough but that a dangerous weapon must be used so that life is placed in an objective state of danger, citing Smith v. United States, 309 F.2d 165, 166–167 (9 Cir., 1962) and Wagner v. United States, 264 F.2d 524, 530–531 (9 Cir., 1959) cert. denied 360 U.S. 936, 79 S.Ct. 1459, 3 L.Ed.2d 1548 (1959). The appellant points to the fact that there is no testimony that the gun in this case was loaded and that the manager of the Association was at least in doubt as to whether he saw a gun or the gloved hand of the thief. Appellant suggests that it was likely that the teller, Mrs. Familant, was so overcome with fear that she was unable to distinguish a gun from a gloved hand. He argues that this evidence completely failed to establish the charge con-

---

6. 18 U.S.C. § 2113(c) provides:
   "(c) Whoever receives, possesses, conceals, stores, barters, sells, or disposes of, any property or money or other thing of value *knowing the same to have been taken* from a bank, or a savings and loan association, *in violation of subsection (b) of this section* shall be subject to the punishment provided by said subsection (b) for the taker." (Emphasis supplied.)

6a. 18 U.S.C. § 2113(b) reads in part:
   "(b) Whoever *takes* and carries away, *with intent to steal or purloin,* any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more

than ten years, or both; * * *." (Emphasis supplied.)

7. Section 2113(d) under which Count IV of the indictment is laid provides:
   "(d) Whoever, in committing or attempting to commit, any offense defined in subsections (a) and (b) of this section, *assaults any person,* or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both." (Emphasis supplied.)

8. Fed.R.Crim.P. 52(b), 18 U.S.C. provides:
   "(b) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." United States v. Max, 156 F.2d 13 (3 Cir., 1946).

tained in Count IV entitling him to an acquittal thereon.

Unquestionably the requirement of the statute that life shall be put in jeopardy means actual jeopardy and not merely that the victim thought he was in danger. United States v. Donovan, 242 F.2d 61 (2 Cir., 1957). The testimony of the manager on the presence of a gun is vague. However, no such indefiniteness is manifest in the testimony of the teller. She stated that when she first saw the accused at her counter he said to her: "Now be quiet I won't hurt you." He then jumped up and over the counter, repeating his admonition, at which point she observed the gun in his hand, which she described in detail. In answer to a question she replied: "Yes, he pointed the gun at me, that is he pointed it, when he went by the area there [in passing her desk and going toward the safe]."

In Wagner v. United States, supra, cited by the appellant, the court considered the latter part of § 2114 of Title 18 U.S.C. (robbing mails and putting the life of a postal employee in jeopardy by the use of a dangerous weapon) and, as submitted by appellant, held that more than "mere holdup by force or fear" was required. It said:

"* * * It must be a holdup involving the use of a dangerous weapon actually so used during the robbery that the life of the person being robbed is placed in an objective state of danger. * * *"

It went on, however, to add:

"Perhaps the most obvious and common way in which a gun may be used to place life in an objective state of danger is by pulling the trigger and firing a shot. But a jury is by no means limited to such a showing as this in order to find that an objective state of danger existed."

"Here there is evidence that a gun, which the jury could infer was loaded,[8] was pressed against Mar-

[8] There was no direct evidence that the gun was loaded. When, however, a robber displays a gun to back up his demands, he wants his victim to believe that it is loaded, and the fact-finder may fairly infer that it was. Here there was a voiced threat by one of the robbers that Martin would be shot if he did not keep his hand away from his coat pocket.

tin's side with such force that it ripped his shirt. This was an overt act not necessarily and in fact not ordinarily associated with the commission of a robbery. Had Martin cried out, grappled with his assailant, sought to escape, or refused to hand over the money—or had his assailant mistakenly thought he was offering resistance—Martin's life would probably have been forfeited.

"We hold that the jury was warranted in finding the use of the gun in this manner placed Martin's life in an objective state of danger, and so jeopardized his life within the meaning of the statutes. The evidence was therefore sufficient on this branch of the case." 264 F.2d at 530–531.

Admittedly the threat was more emphatically articulated and implemented in Wagner than in the case at bar. Nevertheless the presence of the weapon was described by Mrs. Familant and at its point, her conduct was commanded. Of course she was frightened but enough evidence was presented to sustain the jury's decision that there was objective jeopardy to her life, and for that matter the life of Mr. Potter, by the use of a dangerous weapon. Appellant's claim that Count IV must be dismissed as unsupported by evidence is not warranted.

Having conceded reversible error in the trial of Counts III and IV the Government seeks to salvage the convictions in Counts I and II which it contends are valid and that the sentences are likewise permissible, if treated as concurrent rather than consecutive. The appellant disputes this, but we need not examine the merits of that argument as we think

he is entitled to a new trial on Counts I [9] and II also.

The appellant points out that the Trial Court instructed the jury that it could find him guilty on all four counts and it so found. He urges that guilt under Count III is inconsistent with guilt under Counts I, II and IV. He submits that under the cases of Milanovich v. United States, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed. 2d 773 (1961) and Heflin v. United States, supra, such a charge is erroneous because a defendant cannot be guilty of stealing and possessing the same article and that a new trial is required.

The Government contends that the case at bar is distinguishable from the two cases cited, because they involved "receiving" counts and Count III of the indictment at bar was for "possession and concealment". This is a distinction without a difference. In Heflin v. United States, supra, the Supreme Court after a review of the legislative history of 18 U.S.C. § 2113(c) [10] said:

"* * * [I]t seems clear that subsection (c) was not designed to increase the punishment for him who robs a bank but only to provide punishment for those who receive the loot from the robber. We find no purpose of Congress to pyramid penalties for lesser offenses following the robbery. It may be true that in logic those who divide up the loot following a robbery receive from robbers and thus multiply the offense. But in view of the legislative history of subsection (c) *we think Congress was trying to reach a new group of wrongdoers, not to multiply the offense of the bank robbers themselves.*" (Emphasis supplied.) 358 U.S. at 419–420, 79 S.Ct. at 453–454, 3 L.Ed.2d 407.

■ The charge of the Trial Judge that the jury could find the appellant guilty on all four counts erroneously permitted a finding of guilt on Count III which would, indeed, be inconsistent with such a finding on Counts I, II and IV. As in Malinovich (supra, 365 U.S. at 555, 81 S.Ct. at 730, 5 L.Ed.2d 773), there is no way of knowing what verdict the jury would have found under a proper charge. The appellant is therefore entitled to a new trial on Counts I, II and, for this additional reason, on Count IV.

■ The same rationale reveals an even more fundamental error in connection with the charge to the jury. It was instructed that it could find the defendant guilty on Count III, yet the Government has conceded that Count III does not charge a crime. This being so, the Jury deliberated on a subject not properly before it. How far the appellant was prejudiced by the influence of that erroneous submission is beyond calculation. Again, only a new trial on Counts I, II and IV can remedy the error.

The Government urges that the appellant failed to request appropriate instruction of the jury by the District Court, or clarification of its charge, in compliance with Federal Rule of Criminal Procedure 30. Again, as indicated heretofore in connection with Count IV, the error is so plain and the appellant's rights so substantially affected that he is not precluded from raising his contentions here.

9. Count I is based upon § 2113(a) of Title 18 U.S.C. That subsection reads:
"§ 2113. Bank robbery and incidental crimes
"(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, or any savings and loan association; or
"Whoever enters or attempts to enter any bank, or any savings and loan association, or any building used in whole or in part as a bank, or as a savings and loan association, with intent to commit in such bank, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny—
"Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both."

10. Note 6, Supra.

This disposition makes unnecessary an examination of the several other errors urged by the appellant for our consideration.

The judgment of conviction is reversed on all four counts and the case remanded for a new trial on Counts I, II and IV and for the dismissal of Count III.