**UNITED STATES of America,
Appellee,**

v.

**Milton BERLIN, Appellant.
Cal. No. 371, Docket 72–1894.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 5, 1972.

Decided Jan. 30, 1973.

---

Anthony T. Accetta, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., E. D. N. Y., and L. Kevin Sheridan, Asst. U. S. Atty., on the brief), for appellee.

Allen S. Stim, Plainview, N. Y., for appellant.

Before LUMBARD, FEINBERG and MANSFIELD, Circuit Judges.

LUMBARD, Circuit Judge:

Milton Berlin appeals from a judgment of conviction entered in the Eastern District after a jury trial. He was tried on a four-count indictment charging various violations of 18 U.S.C. §§ 1010 and 1014. The activities charged involved the submission of false mortgagee applications to the Federal Housing Administration to secure mortgage insurance and to two federally insured Savings and Loan Associations to secure mortgage loans. The jury convicted on Counts One and Two and acquitted on Counts Three and Four. The district court thereupon imposed concurrent one year sentences and a non-cumulative fine of $2,500 on each of the first two counts.

Count One charged that Berlin, in violation of 18 U.S.C. §§ 1010 and 2 "aided, abetted, counseled and caused" Joseph Oswald to submit a false mortgagee's application to the F.H.A. for the purpose of securing mortgage insurance. The alleged falsity was a statement that Oswald had paid, in cash, $2,200 as a deposit on the property described in the application, when in fact no deposit had been paid. Count Two charged that, in violation of the same provisions, Berlin "aided, abetted, counseled and caused" Oswald to submit to the F.H.A. with the above application a contract for the sale of other property, owned by Oswald, to Berlin, as "purchaser," under a fictitious name, which contract falsely stated that the purchaser had paid $1,500 to Oswald.

Counts Three and Four, on which appellant was acquitted, concerned two separate purchases of real property by Berlin. These purchases were made through John Wilkes, a "straw man," who subsequently, according to plan, assigned the property to Berlin. It was charged that appellant "aided, abetted, counseled and caused" Wilkes to submit mortgage applications to federally insured Savings and Loan Associations in

which Wilkes was falsely identified as the purchaser of the property, in violation of 18 U.S.C. §§ 1014 and 2. Since Berlin was acquitted on these counts, their relevance to this appeal lies in Berlin's assertion that the district court improperly admitted evidence of a third such transaction between Berlin and Wilkes, with which the indictment did not charge Berlin because the statute of limitations had run.

At the trial, the government showed that on or about February 6, 1968, Berlin, an experienced real estate broker, caused to be submitted to the F.H.A. on behalf of Oswald an application for mortgage insurance that contained several false statements. In addition to the statement that Oswald had made a $2,200 down payment on the property involved, there was submitted as a supporting document a contract between Oswald and Berlin that falsely recited payment by Oswald and receipt by appellant of $2,200 on the signing of the contract.

In an earlier related transaction, on January 4, 1968, Berlin and Oswald had executed a contract for the sale of Oswald's house to appellant. Berlin, as the purchaser, had signed this contract under the fictitious name of "Martin Barrone." This contract falsely stated that Oswald had received from "Barrone" $1,500 as a down payment on the sale of Oswald's property. The goal of these two transactions was a trade of Oswald's property for Berlin's property.[1]

In the application for mortgage insurance on the sale of the Berlin property, the F.H.A. specifically requested a copy of the Oswald-"Barrone" contract in order to show Oswald's financial capability. The evidence indicated that without this contract Oswald would not have qualified for the mortgage insurance. Prior to the submission of the contract, the F.H.A. had rejected an earlier application by Oswald, and there was testimony that it

---

1. It appears that the trade was not intended to be an "even swap" in the final analysis. The plan seems to have been that eventually Oswald would pay Berlin $4,000, which was to have been Berlin's profit on the transaction. However, the transaction never reached this stage because Berlin was never able to deliver good title to the house he purported to trade.

was this contract, with its recitation of the receipt by Oswald of the $1,500, that persuaded the F.H.A. to reverse its earlier decision. There was also testimony that, had the F.H.A. known that the $1,500 had not in fact been paid to Oswald and had it known that "Barrone" was in fact the same broker selling the house whose mortgage was to be insured, no mortgage insurance would have been granted.

The government's evidence indicated that Berlin controlled this entire transaction. Oswald testified that although he provided Berlin with the personal information contained in the application, he did not complete that portion of the application that falsely stated that he had made a $2,200 down payment. He attributed this statement entirely to Berlin. Oswald testified that he told Berlin that he did not have the stated down payment on the house, and Berlin replied that this was no problem because the transaction in effect amounted to a swap of one house for the other. Berlin did not testify at the trial and apparently does not dispute Oswald's account of the transactions.

■ Appellant's first assertion is that it was error for the district court to deny his pre-trial motion to sever Counts One and Two from Counts Three and Four. We do not agree. Since the offenses charged in the first two counts were "of the same or similar character" as those charged in the second two counts, the joinder of the counts was proper under Rule 8(a) of the Federal Rules of Criminal Procedure. Rule 14, of the Federal Rules of Criminal Procedure, vests the trial judge with great discretion with regard to motions for severance and appellant has not demonstrated that the district court abused its discretion.

■■ Appellant's second contention, that evidence of the third transaction between Berlin and Wilkes, which was not charged in the indictment, was erroneously admitted into evidence, is also without merit. One of the essential elements in the government's case, as appellant acknowledges, was Berlin's intent or guilty knowledge. In this regard, we find this evidence of prior similar criminal activity to have been admissible as probative of this element. United States v. Deaton, 381 F.2d 114, 117–118 (2d Cir. 1967). Nor was the probative value clearly outweighed by its prejudicial effect on the jury. The challenged evidence related most directly to the offenses charged in Counts Three and Four. Since the jury acquitted on these counts, we do not believe that the evidence unduly prejudiced the jury.

Appellant's third contention, that all counts of the indictment were deficient and failed to state a crime, is more troubling. At the close of the government's case, appellant moved to dismiss the indictment. Counts One and Two concerned violations of 18 U.S.C. § 1010 [2] and Counts Three and Four concerned violations of 18 U.S.C. § 1014.[3] An essential element of a violation of either statutory provision is that the offender had knowledge of the falsity of the statement that was made.

2. "Whoever, for the purpose of obtaining any loan or advance of credit from any person . . . with the intent that such loan or advance of credit shall be offered to or accepted by the Federal Housing Administration for insurance, . . . or for the purpose of influencing in any way the action of such Administration, makes, passes, utters, or publishes any statement, knowing the same to be false, or alters, forges, or counterfeits any instrument, paper, or document, or utters, publishes, or passes as true any instrument, paper, or document, knowing it to have been altered, forged, or counterfeited, or willfully overvalues any security, asset, or income, shall be fined not more than $5,000 or imprisoned not more than two years, or both."

3. "Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of . . . a Federal Savings and Loan Association . . . upon any application . . . shall be fined not more than $5,000 or imprisoned not more than two years, or both."

As a violation of § 1010, Count One charged that appellant "aided, abetted, counseled and caused . . . Oswald to submit to the Federal Housing Administration . . . a 'false' application for mortgage insurance, and that the 'application falsely stated that . . . Oswald paid $2,200 as a cash deposit on such purchase when in fact no such deposit was paid' "; Count Two charged that appellant

> "executed a contract for the purchase of real property . . . under the fictitious name of 'Martin Barrone', knowing that such name was fictitious and said contract stated falsely that 'Martin Barrone was the purchaser of the property . . . and that a check for $1,500 was delivered by 'Barrone', the buyer, to . . . Oswald, the seller."

Count Two proceeded to charge that appellant "aided, abetted, counseled and caused" Oswald to submit the contract to the F.H.A. as a supporting document with his application for mortgage insurance. With regard to § 1014, Counts Three and Four charged that appellant

> "aided, abetted, counseled and caused . . . John Wilkes to submit to (two federally insured Savings and Loan Associations) a false Application for Mortgage Loan in order to secure a mortgage loan from said (Savings and Loan Associations)."

The deficiency that appellant sees in the indictment is that there is no allegation that Berlin knew of the falsity of the statements and/or documents that he submitted.[4] The government argues that the indictment is sufficient because, although there is no explicit allegation that Berlin knew that the statements were false, such an allegation is implicit from the language used in each count.

■■ Of course, there is no requirement that the offense be charged in the language of the statute, so long as the defendant is apprised of the offense with

which he is charged. United States v. DiPietroantonio, 289 F.2d 122, 124 (2d Cir. 1961). However, as one leading commentator has said:

> "If knowledge or intent are (sic) not an element of a particular crime, then of course they need not be pleaded. An indictment or information is defective, however, in failing to allege these elements if they are expressly contained in the statute . . . . The elements need not be alleged in terms, and a pleading is good if it fairly imports knowledge, intent, or malice where these are elements of the crime."

1 Wright, Federal Practice and Procedure (Criminal) § 125 pp. 242–44. As Chief Judge Clark said in United States v. LaMont, 236 F.2d 312, 315 (2d Cir. 1956):

> "It is of course the function of an indictment to set forth without unnecessary embroidery the essential facts constituting the offense and thus accurately acquaint the defendant with the specific crime with which he is charged. But an allegation for lack of which the prosecution must evidently and as a matter of law fail cannot be regarded as superfluous."

The fact that appellant did not raise this issue until after the completion of the government's case did not constitute a waiver of the deficiency. See Rule 12(b)(2) of Federal Rules of Criminal Procedure.

■ The government argues that, since the counts charged that Berlin "counseled and caused" Oswald to submit the false statements, the term "counsel" implies knowledge of the falsity of the statements. With this argument we cannot agree. One can counsel and cause another to utter a statement that one only later learns to be untrue. Therefore, Berlin's knowledge of the falsity at the time he caused the statements to be made is not necessarily implied from the al-

---

4. Although Berlin was acquitted on Counts Three and Four, he nevertheless asserts that the court's denial of his motion to dismiss these counts was reversible error because he was prejudiced by their submission to the jury.

legation that he "counseled and caused" the statements to be made. For this reason, we agree with appellant that Counts One, Three and Four fail to allege a crime and therefore should have been dismissed by the trial court.

■ This deficiency was not cured by the fact that each count cited the statute that appellant is alleged to have violated. Although the statutes in question explicitly require knowledge of the falsity, if this were enough to cure a deficient statement, then almost no indictment would be vulnerable to attack; for it is a common practice in indictments to cite the statute that is alleged to have been violated. We have been cited to no authority indicating that an indictment can be cured in such a fashion. Indeed, the cases, while not discussing the point explicitly, seem to imply that an indictment that fails to allege all the elements of the offense required by the statute will not be saved by simply citing the statutory section. See, e. g., United States v. Calhoun, 257 F.2d 673 (7th Cir. 1958); United States v. Roach, 321 F.2d 1 (3rd Cir. 1963); and Robinson v. United States, 263 F.2d 911 (10th Cir. 1959).

■ With respect to Count Two, however, we agree with the government that the allegation of Berlin's knowledge of the false statements in the supporting documents is apparent from a fair reading of the charge. Count Two charged that Berlin executed a contract, as noted earlier,

> "*knowing* that such name [Martin Barrone] was fictitious and said contract stated falsely that 'Martin Barrone' was the purchaser of the property . . . and that a check for

$1,500 was delivered by 'Barrone', the buyer, to Joseph E. Oswald, the seller." (emphasis supplied).

We believe that this is sufficient to allege that, at the time Berlin "counseled and caused" Oswald to submit the contract as a supporting document with his mortgage loan insurance application, he knew that material statements contained therein were false. Therefore, the motion to dismiss was properly denied with respect to Count Two.

■ Berlin also asserts that he was so severely prejudiced by the submission of the three defective counts to the jury that we should also reverse his conviction on Count Two. In this contention, he is supported by the language and decision of the Third Circuit in United States v. Roach, *supra*.[5]

In this regard, we disagree with United States v. Roach, at least insofar as appellant seeks a similar result in this case. We note that this constituted merely an 'alternate holding, for the court had already resolved to reverse the convictions on the non-defective counts because of errors in the trial court's charge to the jury. Moreover, in *Roach,* the jury convicted on the defective count, whereas here the jury acquitted on two of the three defective counts. The fact that the jury in our case acquitted on Counts Three and Four, concerning a separate transaction, while convicting on Counts One and Two, shows that this jury very carefully considered the evidence on each count and reached its verdict on the evidence relative thereto. Furthermore, since evidence of the transactions alleged in Counts Three and Four was admissible to show Berlin's guilty knowledge and intent, United States v.

---

5. In *Roach*, the defendant was charged in four counts with various offenses emanating from his alleged robbery of a federally insured Savings and Loan Association. It was conceded that Count III was defective and did not charge a crime. In reversing with respect to all counts, the court said:

> "It (the jury) was instructed that it could find the defendant guilty on Count III, yet the Government has conceded that Count III does not charge a crime. This being so, the Jury deliberated on a subject not properly before it. How far the appellant was prejudiced by the influence of that erroneous submission is beyond calculation. Again, only a new trial on Counts I, II, and IV can remedy the error."

Deaton, *supra,* we do not believe that appellant was prejudiced by the submission of Counts Three and Four to the jury. Therefore, the submission of these two defective counts provides no basis for reversing Berlin's conviction on Count Two.

With respect to Count One, which we have also held to be defective, we note that Counts One and Two allege two separate false statements that are merely different phases of the same transaction. Therefore, most, if not all, of the evidence presented on either count was relevant to both counts. The jury having convicted on both counts, we fail to see how one can reasonably argue that it would have acquitted on Count Two if that count alone had been before it. In this regard, we feel that the application of the somewhat mechanical view in *Roach* would run afoul of what we see as a strong judicial policy against remanding criminal cases for new trial when there is no reason to think the factfinder in the first trial was improperly influenced. Hence, we reject appellant's argument that we should reverse his conviction on Count Two.

Similarly, we reject appellant's fourth contention, that the jury's verdict is not supported by the evidence.[6] There was sufficient evidence from which the jury could find that appellant knew of the falsity of the statements in the contract submitted as a supporting document, that appellant was in control of the transaction involving Mr. Oswald, and that he caused the false statements to be made in support of the application to the F. H. A. with the requisite criminal intent.

Finally, appellant claims that he was prejudiced by the court's failure to give his requested instruction No. 17.[7] Essentially, his argument is that, since the indictment used the language "aided, abetted, counseled and caused", he was entitled to this instruction on the issue of aiding and abetting, and the failure to give this instruction confused the jury to his prejudice. However, it is apparent that the language used in the indictment was taken directly from 18 U.S.C. § 2,[8] which charges certain criminal participants as principals. Although the indictment included the words "aided" and "abetted", it is clear that the evidence was all directed to show that Berlin "counseled and caused" (words also used in the indictment) the making of the false statement. Therefore, appellant's requested instruction was woefully incomplete and would have caused confusion rather than eased it. Accordingly, it was not error for the trial court to refuse to give defendant's requested instruction No. 17.

Since appellant received concurrent sentences on the two counts, the question arises whether we should remand to the district court for resentencing. As indicated earlier, Berlin was sentenced to concurrent one-year sentences and a non-cumulative fine of $2,500. Since the maximum sentence permitted by 18 U.S.C. § 1010 is two years imprisonment and $5,000 fine for each count (in this case, a total of 4 years imprisonment and $10,000 fine), we are not persuaded that the district court's sentence on Count Two was influenced by the conviction on Count One. Thus,

---

6. Because of our view that the remaining counts of the indictment were defective, we limit our consideration of appellant's argument on the sufficiency of the evidence to Count Two.

7. Appellant's requested instruction no. 17 stated that:
"In order to convict a defendant who has been charged as an aider or abettor, it is necessary that there be evidence showing an offense to have been committed by a principal and that the principal was aided and abetted by the accused."

8. "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

there is no need to remand for resentencing on Count Two.

Accordingly, we reverse the conviction on Count One and affirm on Count Two.[9]

---

9. In light of our conclusion that Counts One, Three and Four of the indictment were defective, we need not consider appellant's assertion that Counts One and Two were repetitious and, thus, that the district court erroneously denied appellant's motion to dismiss Count Two.