MILANOVICH ET UX. *v.* UNITED STATES.

No. 79. Argued February 20, 1961.—Decided March 20, 1961.

*J. Hubbard Davis* and *Raymond W. Bergan* argued the cause for petitioners. *Russell T. Bradford* was on the petition for certiorari. *Mr. Davis* filed a brief on the merits.

552

*J. F. Bishop* argued the cause for the United States. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Wilkey* and *Beatrice Rosenberg*.

MR. JUSTICE STEWART delivered the opinion of the Court.

The petitioners are husband and wife. They were both convicted in a Federal District Court for stealing several thousand dollars in currency from a commissary store at a United States Naval Base. The wife was convicted also on a separate count for receiving and concealing the stolen currency.[1] Both petitioners were sentenced to prison on the larceny conviction, the husband for a term of five years, and the wife for a ten-year term. In addition, the wife received a five-year concurrent sentence on the receiving count.

Throughout the trial counsel for the petitioners consistently maintained the position that a thief could not be convicted of receiving from himself.[2] Although direct-

---

[1] The statute under which the petitioners were convicted is 18 U. S. C. § 641. It provides:

"Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

"Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both."

[2] "[W]e feel, sir—for the jury to be considering both receiving and stealing—that both charges are inconsistent and if the evidence is to

ing an acquittal on the receiving count in the husband's case, the trial judge overruled a similar motion on behalf of the wife. Counsel then clearly indicated his intention to request that the jury be instructed that it could not find the wife guilty of both stealing and receiving.[3] The trial judge responded by pointing out that the Fourth Circuit had decided, in *Aaronson* v. *United States,* 175 F. 2d 41, that "it is possible that as long as the person did not actually participate in the actual taking of the goods, that same person may be found guilty of receiving and concealing and may also be found guilty as an accessory before the fact or as an aider and an abetter of the actual charge of theft." Faced with this controlling Fourth Circuit authority, counsel did not engage in the futile exercise of submitting a more formal request for such instructions.

When the case reached the Court of Appeals, that court put aside its decision in the *Aaronson* case, in the light of this Court's decision in *Heflin* v. *United States,* 358 U. S. 415, which had been announced in the meantime. In *Heflin* we held that a defendant could not be convicted and cumulatively sentenced under 18 U. S. C. § 2113 for both robbing a bank and receiving the proceeds of the robbery. Relying on that decision, the court set aside the sentence imposed upon the wife for receiving. 275 F. 2d 716. It was the court's view that "in the absence of a contrary indication by Congress, a defendant charged with offenses under statutes of this character may not be convicted and punished for steal-

---

be believed that these people are participants, then they cannot be guilty of receiving, and if they are guilty of receiving, they cannot be guilty of participating."

[3] "Your Honor, we will ask the Court to instruct the jury that inasmuch as they are inconsistent counts that they can only come back, if they come back with a verdict of guilty, as to one or the other, but not both."

ing and also for receiving the same goods." 275 F. 2d, at 719. Although *Heflin* involved a different section of the criminal code, the court found "no differences between the two statutes or their legislative histories justifying divergent interpretations in respect to the issue before us."

In this view we think that the Court of Appeals was correct. As the court recognized, the question is one of statutory construction, not of common law distinctions. Compare *Metcalf* v. *State*, 98 Fla. 457, 124 So. 427; *Smith* v. *State*, 59 Ohio St. 350, 52 N. E. 826; *Jenkins* v. *State*, 62 Wis. 49, 21 N. W. 232; *Regina* v. *Hilton*, Bell C. C. 20, 169 Eng. Rep. 1150, with *Allen* v. *State*, 76 Tex. Cr. R. 416, 175 S. W. 700; *Regina* v. *Perkins*, 2 Den. C. C. 458, 169 Eng. Rep. 582; *Regina* v. *Coggins*, 12 Cox C. C. 517. With respect to the receiving statute before us in *Heflin*, we decided that "Congress was trying to reach a new group of wrongdoers, not to multiply the offense of the . . . robbers themselves," 358 U. S., at 420. We find nothing in the language or history of the present statute which leads to a different conclusion here. As in *Heflin*, the provision of the statute which makes receiving an offense came into the law later than the provision relating to robbery.[4]

It is now contended that setting aside the sentence on the receiving count was not enough—that the conviction on the larceny count must also be reversed, and the case remanded for a new trial. The argument is that although the evidence was sufficient to support a conviction for either larceny or receiving,[5] the judge should have in-

---

[4] The paragraph making it an offense to steal government property had its genesis in the Act of March 2, 1863, c. 67, 12 Stat. 696, 698. The paragraph as to receivers originated in the Act of March 3, 1875, c. 144, § 2, 18 Stat. 479.

[5] It is acknowledged here that the evidence was sufficient to support a jury finding that both petitioners aided and abetted the larceny, and thus were guilty as principals under 18 U. S. C. § 2. It is also

structed the jury that a guilty verdict could be returned upon either count but not both. It is urged that since it is now impossible to say what verdict would have been returned by a jury so instructed, and thus impossible to know what sentence would have been imposed, a new trial is in order. This was the view of Chief Judge Sobeloff, dissenting in the Court of Appeals. 275 F. 2d, at 721.

We think that the point is well taken. In *Heflin* we were not concerned with the correctness of jury instructions, since that case arose out of a collateral proceeding to correct an illegal sentence where the petitioner was asking only that the cumulative punishment imposed for receiving be set aside. In this case, by contrast, a direct review of the conviction brings here the entire record of the trial. We hold, based on what has been said as to the scope of the applicable statute, that the trial judge erred in not charging that the jury could convict of either larceny or receiving, but not of both.

Though setting aside the shorter concurrent sentence imposed upon the wife for receiving, the Court of Appeals left standing a ten-year prison term for larceny, double the punishment that had been imposed upon the husband for the identical offense. Yet there is no way of knowing whether a properly instructed jury would have found the wife guilty of larceny or of receiving (or, conceivably, of neither). Thus we cannot say that the mere setting aside of the shorter concurrent sentence sufficed to cure any prejudice resulting from the trial judge's failure to instruct the jury properly. It may well be, as the Court of Appeals assumed, that the jury, if given the choice, would have rendered a verdict of guilty on the larceny count, and

---

conceded that the evidence was sufficient to support the wife's conviction for receiving and concealing the stolen property (a substantial amount of silver currency having been found in a suitcase in her home two weeks after the robbery).

that the trial judge would have imposed the maximum ten-year sentence on that count alone. But for a reviewing court to make those assumptions is to usurp the functions of both the jury and the sentencing judge.

We find no merit in the petitioners' argument as to the trial court's conduct with respect to cautionary instructions to the witnesses for the Government. Accordingly, the judgment as to Mike Milanovich is affirmed. For the reasons stated, the judgment as to Virginia Milanovich is set aside, and her case remanded to the District Court for proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE CLARK, MR. JUSTICE HARLAN and MR. JUSTICE WHITTAKER join, dissenting.

This is a prosecution brought under 18 U. S. C. § 641 [1] upon an indictment containing several counts. One charged the defendant Virginia Milanovich, petitioner herein, with the theft of government property; another charged her with receiving the stolen property with an intent to convert it to her own use. Both counts were allowed to go to the jury which explicitly found the defendant guilty on each of the two counts.

---

[1] "Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

"Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both."

This was the evidence on which the jury must have based their verdict against the defendant. She and her husband, as owners of an automobile, transported three others under an arrangement whereby the three were to break into a United States naval commissary building with a view to stealing government funds. Defendant and her husband were to remain outside for the return of their accomplices after the accomplishment of the theft. In fact, for one reason or another, husband and wife drove off without awaiting the return of their friends. Not finding the automobile where they had left it, the thieves buried the booty. No share of the stolen money ever touched the hand of petitioner or was in any sense received by her until seventeen days later when, after she had removed some of the booty from the base, it was soon after discovered by FBI agents during a legal search of the premises. Since she herself was not an active participant in the breaking in and thieving, she was amenable to § 641 because she, as an accessory, was legally deemed a principal under 18 U. S. C. § 2.[2] On this basis the trial judge submitted the case to the jury and the jury was enabled to find her guilty of the substantive offense of stealing government property, as well as to return a verdict of guilty on the receiving charge. The trial judge then sentenced the defendant on each of the counts. Because of the extensive criminal record of the defendant, he imposed a sentence of ten years on the thieving count and five years on the receiving count, the sentences to run concurrently.

---

[2] "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

558

The Court of Appeals, drawing on our decision in *Heflin* v. *United States*, 358 U. S. 415, deemed it necessary to set aside the sentence imposed on the receiving count. It read *Heflin* as holding that the crime of receiving was solely directed to those who were not convicted of stealing; the latter conviction was therefore invalidated. The Court, likewise relying on *Heflin*, today holds that since the jury should have been instructed that they had power to return a verdict of guilty on only one count, the proceedings against the defendant must start all over again, since a reviewing court cannot predict what the jury would have done under proper instructions.

Both of these conclusions rest, I believe, on a wholly unwarranted reliance on *Heflin*. They disregard the only issue that was before the Court in that case, and thereby misconceive its holding. Today's decision reflects the common-law doctrine of merger and the consequences of such merger on the requirements of criminal procedure—specifically, what separate counts may be laid in an indictment and the duty of a trial judge in charging the jury the kind of a verdict they may return to an indictment of multiple counts.

It is hornbook law that a thief cannot be charged with committing two offenses—that is, stealing and receiving the goods he has stolen. *E. g., Cartwright* v. *United States*, 146 F. 2d 133; *State* v. *Tindall*, 213 S. C. 484, 50 S. E. 2d 188; see 2 Wharton, Criminal Law and Procedure, § 576; 136 A. L. R. 1087. And this is so for the commonsensical, if not obvious, reason that a man who takes property does not at the same time give himself the property he has taken. In short, taking and receiving, as a contemporaneous—indeed a coincidental—phenomenon, constitute one transaction in life and, therefore, not two transactions in law. It also may well be that a person who does not himself take but is a contemporaneous par-

ticipant as an aider and abettor in the taking is also a participant in a single transaction and therefore has committed but a single offense. *Regina* v. *Coggins,* 12 Cox C. C. 517; *Regina* v. *Perkins,* 2 Den. C. C. 458, 169 Eng. Rep. 582; *Rex* v. *Owen,* 1 Moody C. C. 96, 168 Eng. Rep. 1200. In such a case, the jury must be told that the taking and receiving, being but a single transaction, constitute, of course, only one crime. See *Commonwealth* v. *Haskins,* 128 Mass. 60. (This, of course, does not bar Congress from outlawing and punishing as separate offenses the severable ingredients of one compound transaction. See *Gore* v. *United States,* 357 U. S. 386.)

The case before us presents a totally different situation—not a coincidental or even a contemporaneous transaction, in the loosest conception of contemporaneity. Here we have two clearly severed transactions. The case against the defendant—and the only case—presented two behaviors or transactions by defendant clearly and decisively separated in time and in will. The intervening seventeen days between defendant's accessorial share in the theft and her conduct as a recipient left the amplest opportunities for events outside her control to frustrate her hope of sharing in the booty, or ample time for her to change her criminal purpose and avail herself of a *locus poenitentiae.* Two larcenies, separated in time, would not be merged; what legal difference between the two situations here?

It surely is fair to say that in the common understanding of men such disjointed and discontinuous behaviors by Mrs. Milanovich—(1) bringing thieves to the scene of their projected crime and departing without further ado before the theft had been perpetrated, and (2) taking possession seventeen days later of part of the booty— cannot be regarded as a single, merged transaction in any intelligible use of English. And that which makes no sense to the common understanding surely is not required

by any fictive notions of law or even by the most senti-
mental attitude toward criminals. I venture to believe
that not a single case concerned with a situation com-
parable to that now before the Court can be found in the
law reports of England, of any of the States of this coun-
try, or of the federal courts, in which it was held or
suggested that two disjointed, decisively separated mani-
festations of conduct constitute as a matter of law a
single, fused transaction. An ample canvass of the
reports has certainly not revealed the existence of such
a case, and one reads the opinion of the Court in vain to
find a suggestion that any such precedent is available.

One can say with confidence that *Heflin* is no warrant
for the conclusion pronounced by the Court. There was
not the remotest suggestion in the petition that brought
that case here, in the briefs that were submitted before
argument, in the oral argument, or in the opinion which
formulated the decision, that the case was concerned with
the power of the court to submit the several counts to
the jury and the right of the jury to convict on separate
counts for conduct charging separate transactions clearly
separated in fact. In *Heflin,* the jury convicted defend-
ant on separate counts of bank robbery and receiving
stolen money. We held that we could find "no purpose
of Congress to pyramid penalties for lesser offenses
following the robbery," and therefore ruled against the
cumulation of punishments, but found no impropriety in
submitting both counts to the jury. I find not a word,
not a hint, not a subtle innuendo suggesting that the case
dealt with criminal procedure—that is, with submission of
different counts to a jury, with the appropriateness of the
judge's charge to the jury, or with the right of a jury to
bring in separate verdicts on separate counts on the basis
of evidence justifying such submission and such verdicts.

*Heflin* is one of a recent series of cases having to do
with what the Court in *Prince* v. *United States,* 352 U. S.

322, 325, called "fragmentation of crimes for purposes of punishment." Beginning with *Bell* v. *United States,* 349 U. S. 81, these cases concerned the propriety of cumulative sentences within different statutory frameworks.[3] "It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment . . . [when] Congress does not fix the punishment for a federal offense clearly and without ambiguity . . . ." *Bell* v. *United States, supra,* at 83–84. In not one of these cases will there be found a word having to do with how crimes should be charged, how submitted to the jury, or what verdicts the jury may return. *Heflin,* like the rest of these cases, was concerned with the duty of the trial judge in sentencing after the jury was through with its job. Indeed, in all these cases, there were several counts on which the jury found a verdict and the issue arose not as to the propriety of leaving all the counts to the jury, but what sentence should be imposed after the verdict had been returned.

---

[3] In *Bell,* the defendant pleaded guilty to an indictment under the Mann Act which charged him in two counts with transporting two women, respectively, for immoral purposes on one trip. This Court held that Congress did not intend to make "simultaneous transportation of more than one woman in violation of the Mann Act liable to cumulative punishment for each woman so transported." 349 U. S., at 82–83.

In *Prince,* two counts of an indictment charging, respectively, entering a bank with intent to rob and robbery were submitted to the jury, which returned verdicts of guilty on both. The Court held that the sentences could not be cumulated and remanded the case to the District Court for resentencing, but made no reference to the fact that two counts were laid and found by the jury.

In *Callanan* v. *United States,* 364 U. S. 587, defendant was convicted on separate counts for conspiracy and extortion. In view of the historic distinctiveness of a conspiracy from the substantive offense which is its object, we held that Congress had made allowable consecutive sentences under the applicable statute.

To draw from *Heflin* the doctrine that an aider and abettor to a theft who at an appreciably later time receives some of the stolen goods may not be charged on separate counts for both transactions, or that a judge may not leave both counts for a jury verdict of guilt on either one or both, when no such question was in issue or adverted to in *Heflin,* is to disregard the whole philosophy of our law based on precedents. It is to base reliance on a case for a new doctrine when that case affords no sustenance for it.

I agree with the District Court in the imposition of two sentences to run concurrently.[4]

MR. JUSTICE CLARK, whom MR. JUSTICE WHITTAKER joins, dissenting.

My duty here is to help fashion rules which will assure that every person charged with an offense receives a fair and impartial trial. But that obligation does not require my ferreting out of the record technical grounds for reversing a particular conviction, grounds which could not possibly have affected the jury's verdict of guilt as a factual determination. If the Government perseveres, the Court's order contemplates a new trial for one of five safecrackers who beyond any evidentiary doubt is guilty of aiding and abetting in looting a government safe of about $14,000, and of thereafter receiving part of the proceeds. The case was tried before a jury for 10 days with scrupulous adherence to proper procedure. Judge Hoffman gave a clear and, I think, correct charge to which petitioner made no objection on the ground upon which the Court now bases its reversal. Nor did petitioner offer a proposed instruction covering that issue. Furthermore, the motion for new trial, as

---

[4] I agree with this Court that the husband's claim of trial error is without merit.

set forth in the record, urged no such ground as error. Nonetheless, the Court reverses, saying that "counsel for the petitioners consistently maintained the position" throughout the trial "that a thief could not be convicted of receiving from himself." Judge Hoffman did not try the case, nor was it submitted to the jury, on that theory. The record shows, as my Brother Frankfurter points out, that beyond question Mrs. Milanovich took no part in the actual physical looting of the safe, and first received any of the stolen money more than two weeks later, not from herself, but from where the safecrackers had buried it. It was on that theory, to which petitioner made no objection, that Judge Hoffman submitted the case to the jury.

With all deference I must point out that in support of its view as to Mrs. Milanovich the Court has quoted merely an excerpt from a statement of this petitioner's counsel, *ante*, p. 552, n. 2, made in chambers on his motion to require the United States Attorney to elect as between the two counts of aiding and abetting, and receiving. Admittedly, this motion was not well taken. However, during that presentation counsel stated: "we *will* ask the Court to instruct the jury" that it cannot find petitioner guilty on both counts. (Emphasis supplied.) But, after the motion to elect was denied, no such instruction was offered nor was there made on that ground any objection to the charge omitting such instruction. Now petitioners have chosen to abandon a claim of error in the denial of their motion to elect, and rely instead upon error in the charge, although no objection had been made on that ground.

Moreover, the charge as given could not possibly have prejudiced Mrs. Milanovich on sentence. She was found guilty both of aiding and abetting, and of thereafter receiving part of the stolen loot. She now stands, after the action of the Court of Appeals, sentenced only on the

aiding and abetting count. Each count carried the same possible penalty, and, even if the case had been submitted to the jury as is now required, it seems rather unreal for us to consider as anything more than so remotely possible as to be highly improbable, that in sentencing this petitioner on the single count the trial judge, who would nonetheless have heard all the evidence on both counts, would be more likely to impose a lesser sentence than the 10 years already given.

The Court does not mention the dilemma which its ruling produces. It says the jury should have been instructed that a guilty verdict could be returned on either count, but not both. This would require the jury to return a not guilty verdict on one count. Here, where the jury had in fact found Mrs. Milanovich guilty of both offenses, it could yet be required to return a false verdict, i. e., false in fact even if true in law, on one of them. Except for its imperfect analogy to the case of factually inconsistent counts charging lesser-included offenses of the main count (as in first degree murder), in which the trial judge gives the jury instructions to be applied successively, the rule suggested today is unheard of in our jurisprudence. For here the jury is invited to consider counts not factually inconsistent, and in such sequence as it chooses, with no more reason to convict on one rather than another except its election on how to characterize the grounds supporting petitioner's imprisonment. Since such a result is required by the present disposition, it would have been better to rule that the prosecutor must elect between the counts, as petitioner originally wished.

As I see the case, however, the jury could not on the evidence here have found the petitioner not guilty, as a matter of fact, on the aiding and abetting count, and guilty on the receiving one. To be guilty of receiving she must have had knowledge of the stolen character of the money taken from the safe. In this case the only

means through which the fact of this requisite knowledge was demonstrated was the clear and convincing proof given by her partners in the crime whose testimony beyond any peradventure proved her guilty of both offenses. How, I ask, could she have been harmed by the jury finding her guilty of both offenses rather than choosing between the two?

To me it is clear that where the evidence is sufficient the jury should be left free, as it always has been, to find the fact of guilt. If in law the verdicts so found, although proper determinations of fact, are not all enforceable, the dilemma is adequately resolved by requiring the trial judge to forego sentencing on the unenforceable verdicts.

For these reasons, and those of my Brother FRANK-FURTER, whom I join, I dissent.