**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Paul Houston THOMPSON, Defendant-Appellant.**

**No. 18722.**

United States Court of Appeals, Sixth Circuit.

Feb. 4, 1970.

A. Wallace Grafton, Jr. (Court Appointed), Louisville, Ky., for appellant.

John R. Wilson, Asst. U. S. Atty., Louisville, Ky., Ernest W. Rivers, U. S. Atty., Louisville, Ky., on brief, for appellee.

Before PECK and McCREE, Circuit Judges, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

Paul Houston Thompson, appellant herein, was indicted and charged with violation of Title 18, U.S.C.A., Sections 2312 and 2313, for transporting a stolen vehicle in interstate commerce and concealing a stolen motor vehicle which was moving in interstate commerce, knowing it to have been stolen. On the trial before a jury, counsel for Thompson objected to the admission of a police accident report and, at the close of the prosecution's case, moved for a judgment of acquittal based on insufficient evidence to convict. Both the objection and the motion were overruled. The jury found appellant guilty as charged on two counts of the indictment, and the court

sentenced him to five years in the penitentiary on each count, with the sentences to run consecutively. Thompson appeals, in forma pauperis, from the judgment on the verdict, and the sentences on the two counts of the indictment.

The facts are as follows: During the evening of June 25, 1966, or the morning of June 26, 1966, a black 1958 model Thunderbird Coupe, Serial No. H–8YH112083, bearing Indiana license 5867M2, was stolen from the Empire Auto Sales used-car lot in Fort Wayne, Indiana. Two days later, on June 28, 1966, a black 1958 Ford Thunderbird was involved in a so-called hit-and-run accident in Louisville, Kentucky. Appellant admitted that he was the driver of the car involved in the accident. An "Auto Wanted Report" was introduced into evidence during the trial by a detective of the Louisville Police Department, showing that a 1958 Thunderbird bearing Kentucky license K78–466 was wanted in connection with the alleged hit-and-run accident. The "Auto Wanted Report" was made in the ordinary course of business by the Louisville Police Department, and was on file with the department.

Four days after the accident, on July 2, 1966, a black Thunderbird was discovered abandoned in Corydon, Indiana. It bore the same vehicle identification, Serial No. H–8YH112083, as the Thunderbird that had been stolen in Fort Wayne. Fingerprints taken from the right front vent window of the recovered Thunderbird were, on the trial identified as the fingerprints of appellant Thompson. Fifteen months after the discovery of this abandoned car in Corydon, Indiana, on October 2, 1967, appellant was arrested in Louisville, Kentucky, and charged in the indictment for having transported and concealed a stolen car, knowing it to have been stolen.

From the evidence, it was shown that the Kentucky license K78–466, which the police "Auto Wanted Report" disclosed was attached to the Thunderbird at the time of the accident, had been attached

to a Cadillac car which Richard Thompson transferred to his son, the appellant, Paul Houston Thompson, on April 28, 1966, at which time Richard Thompson executed a bill of sale of the Cadillac motor vehicle to appellant; and that the bill of sale of the Cadillac showed that it had been registered in Kentucky in 1966 with license number K78–466. It appears that, although the transfer of the Cadillac to appellant was by bill of sale, it was actually a gift from Richard Thompson to his son, the appellant. Appellant, while admitting he was the driver of the Thunderbird involved in the accident, denied that he had transported it from Fort Wayne, Indiana, to Louisville, Kentucky. Instead, he testified that he had borrowed the Thunderbird only a few hours before the accident from his friend, William O. Franklin. Franklin did not testify in the case. We have, therefore, the following evidence upon which the Government relies to sustain the conviction of appellant.

Appellant admits he was driving the stolen car in Kentucky at the time of the so-called hit-and-run accident. The license plates, which had belonged to him, had been removed from the Cadillac he had received from his father, and were affixed to the stolen car, according to the Louisville Police report. The stolen car was found four days after the accident, abandoned in Indiana. As hereafter appears, appellant testified that he had sold the Cadillac, before the accident, to his friend, Franklin.

The Thunderbird, as stated, had been stolen from a used-car lot in Fort Wayne, Indiana, on June 26, 1966. The so-called hit-and-run accident occurred two days later in Kentucky, on June 28, 1966, when appellant admits he was driving the car on which, according to the Louisville Police Department report, were affixed the license plates that had been removed from the Cadillac. Four days after the hit-and-run accident, the car had been transported across the state line again and was found in Corydon, Indiana, with appellant's finger-prints on the right front vent window. Appellant, by this time, had disappeared.

Appellant at the time of his trial in April 1968 was twenty-seven years old, and was twenty-five at the time of the alleged theft and transportation of the motor vehicle in interstate commerce. Prior to that time he had lived in Lima, Ohio, where he worked for the Campbell Soup Company. In Lima, according to appellant's testimony, he had moved into an apartment building where he met William O. Franklin, and they became friends. Franklin was a security guard at the Bayliss Department Store in Lima. Appellant's father, as has been mentioned, had given him a white Cadillac, which, he stated, he afterward sold to Franklin. After the first week in June, 1966, appellant returned from Lima, Ohio, to his home in Louisville, Kentucky. Appellant further testified that after he had returned home, he was visited by Franklin on the day of the accident; that Franklin had driven the black Thunderbird in question that morning from Lima, Ohio, to Louisville, Kentucky, a distance of 180 miles; that after conversing awhile with appellant and some of his friends in Louisville, Franklin stated that, after the long drive, he was tired, and wanted to take a nap in appellant's bed; that before Franklin went to sleep, appellant asked him if he could drive his Thunderbird for a few hours, and Franklin consented; that appellant then took the Thunderbird, and drove around Louisville for a few hours, during which time the so-called hit-and-run accident occurred.

Appellant says that it was not a "hit-and-run" accident. He testified that, after Franklin let him take the black Thunderbird and while driving it in Louisville with three friends—"Herman, Denny and Mike," whose complete names he afterward testified to—he came to the corner of 22nd Street and Duncan when a small child ran out in front of the car; that the child was about a year and a half old; that he hit the child and, almost immediately, stopped the

automobile, got out, picked up the child, "and it was lifeless; it was unconscious. It had two front teeth * * * that was hanging loose and bleeding. Well, I listened for a heartbeat. * * * and 1 heard one and its mother came out of the house * * * screaming, in hysterics, and the child came to, started smiling * * * like it was knocked silly or something and I handed the child to the mother and then the police pulled up about that time. * * * There was maybe fifteen, maybe twenty people there at the most and the officers came and they took the child. Well, after they left—now, nothing was said to me. I got in the car and drove off. The accident was clearly—it wasn't my fault. It was nobody's fault and it just happened, you know. I drove the car back * * * to Franklin, turned it over to him and he left and that's the last I seen of it and that's the only time I ever come in contact with the automobile, the first and only time and that's all I know about it."

"Q. Do you know where William Franklin is right now?

"A. Yes, sir: he is—he came through the jail. I am in jail now, been there for the last six months on this charge and he came through the jail on his way to the federal penitentiary."

It was undisputed that when the police car with two officers came to the scene of the accident, appellant was standing in the street a few feet from the Thunderbird car; that one of the police officers stated he saw him there during about five minutes until the police took the child to the hospital; that the police officer knew appellant; that after the police drove away, appellant and two of his friends drove away in the Thunderbird; that later other police arrived to investigate; but no one was then present at the scene of the accident. It also appeared that the child was not seriously injured, and returned from the hospital with his parents. The child was "all right," according to the police officer in charge.

Appellant said that after the accident, he worked in several different places: in Ocala, Florida, in oil recovery, that he was an oil recovery engineer; that he later was in the citrus fruit business for two or three months; that he saved a sum of money and went to California where he got a job at the Boat Chemical Company in Los Angeles, and worked there as a maintenance man and welder, and afterward returned to Louisville; that he had been in Louisville on Christmas in 1966, six months after the accident; that when he was in Louisville, he was in the tree surgery business with his father and brothers. After the accident, and until appellant's arrest, it appeared that the Federal Bureau of Investigation was looking for him in Kentucky, Florida and California.

Was there any evidence, or any inference to be drawn from the evidence that appellant had stolen the car in Fort Wayne, Indiana, and had transported it into Kentucky? Only two days elapsed between the stealing of the car in Indiana and the accident in Kentucky, at which time he admits he was driving the stolen car.

Possession of a stolen vehicle in a state to which it was recently transported from another state warrants the inference that the possessor participated in the transportation thereof in interstate commerce, in the absence of some explanation of such possession. Prince v. United States, 217 F.2d 838 (C.A. 6); and an inference of guilt may be drawn from the unexplained possession of recently stolen goods. United States v. Guido, 200 F.2d 105 (C.A. 2).

The only explanation offered by appellant for his possession of the car, which he was driving at the time of the accident, and which had been so recently stolen and transported from Indiana to Kentucky, is that he had borrowed the

car from his friend, Franklin, a few hours before the accident. As mentioned, Franklin was not a witness.

The statutory law of Ohio (Ohio Revised Code, Sec. 4503.12) provides that upon the transfer of ownership of a motor vehicle, its registration shall expire, and the original owner shall immediately remove such number plates from the vehicle. The Code also provides that the owner of the vehicle that has been transferred, may make application for registration of another motor vehicle by filing an application for transfer of registration within a period of ten days after purchase of the new vehicle, and may transfer the number plates to the new vehicle. With this latter provision, we are not concerned as there is no claim that appellant made application for registration of another vehicle, or owned another vehicle, after the alleged transfer to Franklin. If appellant did transfer the Cadillac to Franklin, he was obliged immediately to remove the number plates from the Cadillac, which were Kentucky plates K78–466. Once appellant removed those plates they would be in his possession, available to him for disposal, or for whatever use he might make of them.

To recapitulate, appellant's father transferred the Cadillac license number K78–466 to him on April 28, 1966. Appellant says he afterwards sold the Cadillac to Franklin, but there is no evidence except appellant's statement as to the sale to Franklin, nor is there any mention of the date of the claimed sale of the Cadillac to Franklin. If it were sold, it was sold by appellant sometime between April 28, 1966, when appellant's father gave him the Cadillac, and June 7, 1966, when appellant left Lima, Ohio, and returned to his home in Louisville. In brief, appellant would have had to sell the Cadillac to Franklin—if he did sell it—within approximately a month from the time his father gave it to him; and, assuming, that in accordance with the law, appellant removed the Cadillac license plates K78–466 at the time of the

sale to Franklin, appellant would have had these license plates available thereafter until he was found driving the stolen Thunderbird.

■ If license plates K78–466 were seen on the Thunderbird on the date of the accident, when appellant was driving that car, the evidence was sufficient to justify the jury in drawing an inference that the old Kentucky license plates of the Cadillac which were transferred to him by his father, were placed, by appellant himself, on the Thunderbird which was stolen in Ohio, at the time it was stolen, or at some time prior to his being found in possession of the car, while driving it at the time of the accident. In drawing such an inference, the jury could take into consideration that the license plates from appellant's Cadillac were on the stolen car, which he said he had just borrowed a few hours before the accident.

■ With regard to the claimed error of the trial court in admitting the introduction in evidence of the "Wanted Car Report" of the Louisville Police Department showing that the stolen Thunderbird bore the license plates of the old Cadillac motor vehicle, K78–466, owned shortly before by appellant, we are not required to determine whether such a report, based entirely on hearsay and not made by an officer who was a witness to what appeared in the report, was prejudicial to appellant, since the necessary proof in this respect was supplied by the testimony of Detective Schulte of the Louisville Police Department, who arrived in the first police car after the accident, and who testified on direct examination that the Thunderbird at the scene bore Kentucky license plates K78–466. Nor did appellant attempt to explain how, if he had borrowed the car just before the accident, the license plates which had been issued to him were affixed to the stolen car. Appellant was asked how he accounted for the fact that the license plates that had been

issued to him got on the stolen car, and he replied: "I can't account for how the license got on the car."

In our view, the verdict of the jury was sustained by substantial evidence.

■ The concluding contention of appellant is that the trial court erred in sentencing him on each of two counts, the sentences to run consecutively, since the two counts for transporting and for concealing cannot be treated as two separable punishable acts, but only as a single offense. It has been held by the court that the crime of receiving and concealing a motor car is a separate and distinct crime from that of transporting it, and may be separately punished. Woody v. United States, 258 F.2d 535 (C.A. 6), affirmed by per curiam by an evenly divided Court, 359 U.S. 118, 79 S. Ct. 721, 3 L.Ed.2d 673. Woody v. United States, *supra*, was followed by United States v. Linkenauger, 357 F.2d 925 (C. A. 6), which supported *Woody* in holding that the offense of transporting in interstate commerce a motor vehicle, knowing it to have been stolen, is a separate offense from the offense of receiving or concealing a motor vehicle moving in interstate commerce, and knowing such vehicle to have been stolen.

In *Linkenauger*, the court observed that appellant relied on Milanovich v. United States, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 733, in which Mr. Justice Stewart, speaking for the Court, held that a person could not validly be convicted under 18 U.S.C. Section 641, both for stealing government property and for receiving and concealing the same property, citing its decision in Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407. Mr. Justice Frankfurter, in a dissenting opinion in *Milanovich*, in which Justices Clark, Harlan and Whittaker joined, said that: "It is hornbook law that a thief cannot be charged with committing two offenses—that is, stealing and receiving the goods he has stolen. (citing authorities) And this is so for the common-

sensical, if not obvious, reason that a man who takes property does not at the same time give himself the property he has taken." However, Mr. Justice Frankfurter continued, the case against the defendant "presented two behaviors or transactions by defendant clearly and decisively separated in time and in will." And the dissent was based on the fact that seventeen days elapsed "between defendant's accessorial share in the theft and her conduct as a recipient"; that "[t]wo larcenies, separated in time, would not be merged;" and that the defendant could be charged and sentenced on separate counts for both transactions.

In United States v. Lankford, 296 F. 2d 34 (C.A. 4), the court held that conduct with respect to the same automobile on the same day would constitute both violation of the statute prohibiting transportation of stolen vehicles, and the statute prohibiting sale or receipt thereof; and that the *Milanovich* case was to be distinguished on the ground that a different statute was involved.

In the present case, the motor vehicle was stolen in Fort Wayne, Indiana, on June 26, 1966; it was in appellant's possession in Louisville, Kentucky, on June 28, 1966. It was found abandoned in Corydon, Indiana, on July 2, 1966. Was transportation by appellant from Indiana on June 26, 1966, a separate offense from possession and concealment on June 27 or 28 in Louisville, Kentucky, or from transportation to and concealment in Corydon, Indiana, on June 29 to July 2, 1966? Under Woody v. United States, 258 F.2d 535 (C.A. 6), decided by Judge Stewart, now Mr. Justice Stewart, each would be a separate offense. Under Milanovich v. United States, 365 U.S. 551, 81 S.Ct. 728, in the prevailing opinion of the Court written by Mr. Justice Stewart, it would seem that transportation and concealment would be a single offense, if *Milanovich* had been concerned with transportation and concealment of government property in violation of 18 U.S.C.A. Section 641.

Nevertheless, under United States v. Linkenauger, 357 F.2d 925 (C.A. 6), this court, after observing that the appellant in that case relied on Milanovich v. United States, stated: "Since the Supreme Court affirmed *Woody*, although by an equally divided Court, we feel that we are bound by that decision." Whatever misgivings might arise, the decisions in this Circuit are clear that transportation and concealment in violation of Title 18 U.S.C.A. Sections 2312 and 2313 are separate offenses, and sentences on each of the offenses are valid.

However, since transportation and concealment are separate offenses, a jury should be instructed that proof of each crime must be found beyond a reasonable doubt in order to convict for both, and that proof of one offense will not, without more, permit conviction of the other. See Mathis v. United States, 200 F.2d 697 (6th Cir. 1952).

It would have been better if the instruction given here had made this requirement absolutely clear. However, no objection was made to the charge nor is its propriety an issue in this appeal. Since there is ample proof from which the jury could have found concealment apart from the act of transportation, we decline to regard the instruction as plain error. *Cf.* United States v. Powell, 420 F.2d 949 (6th Cir. 1970).

Nevertheless, because appellant was sentenced to a term of five years on the count of transportation of the stolen vehicle, and five years on the count of its concealment, the sentences to run consecutively, we are of the opinion that, in the light of Mathis v. United States, *supra*, the trial court should be given the opportunity of reconsidering whether the sentences should run consecutively, or concurrently.

The judgment is accordingly affirmed, and the cause is remanded to the District Court with leave to the trial judge to reconsider and modify the sentences heretofore entered against appellant.