Lewis P. FRANKLIN, Appellant,

v.

UNITED STATES, Appellee.

Marsell A. BENSON, Appellant,

v.

UNITED STATES, Appellee.

Herbert C. DICKERSON, Appellant,

v.

UNITED STATES, Appellee.

Nos. 11307, 11323 and 11343.

District of Columbia Court of Appeals.

Argued Nov. 9, 1977.

Decided Jan. 13, 1978.

Samuel J. Lowe, Washington, D. C., appointed by this court, for appellant Franklin.

Marie T. Loepp, Washington, D. C., appointed by this court, was on the brief for appellant Benson but did not participate at argument.

Richard S. McMillin, Washington, D. C., appointed by this court, for appellant Dickerson.

Lillian A. McEwen, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease, and Donald A. Couvillon, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before GALLAGHER, NEBEKER and YEAGLEY, Associate Judges.

NEBEKER, Associate Judge:

Appellants Franklin, Benson, and Dickerson were each convicted, after joint trial by jury, of second degree burglary, grand larceny, and receiving stolen property.[1] Although many issues have been raised, only two need be considered: first, whether the trial court erred in denying appellants' motion to suppress certain evidence as illegally seized; and, second, whether the trial court erred in failing to instruct the jury that it could not find appellants guilty of receiving stolen property if it also found them guilty of burglary or larceny. We hold that the suppression motions were properly denied but that a new trial is required for the court's erroneous instruction of the jury.

## I.

Appellants moved before trial to suppress all the fruits of their seizure and detention by police officers for approximately fifteen minutes. The following facts were developed at the suppression hearing.

During the early afternoon hours of October 22, 1975, police officers in an unmarked police car monitored a tentative lookout for two suspects in an armed robbery in their area. Minutes later, one of the officers observed appellant Dickerson standing near the entrance to an alley. Dickerson appeared to look at the officer, then ran into the alley. The officers followed Dickerson into the alley, where he entered an automobile with appellants Franklin and Benson. One of the officers alighted from his vehicle and shouted to appellants that he was a police officer. Appellants proceeded to back their automobile at a high rate of speed (estimated to be 30 miles per hour) toward the other end of the alley.

In the meantime, two officers in a private vehicle nearby had also monitored the lookout and had observed the unmarked police car proceeding to investigate Dickerson's activities. They responded to this situation by proceeding to the opposite end of the alley to block that means of escape should it be necessary. When appellants began to back their automobile toward these officers (away from the officers in the unmarked police car), the officers moved their vehicle to prevent collision and stopped appellants at gunpoint. After appellants had been frisked for weapons, the officers took steps to have the robbery victim brought to the scene for a "showup." While awaiting the robbery victim, the officers observed stereo equipment strewn haphazardly on the back

---

1. D.C.Code 1973, §§ 22–1801(b), –2201, and –2205, respectively.

seat of appellant's automobile. Upon questioning, each of the appellants denied ownership of the equipment or knowledge of how it came to be there.[2] At this juncture, other officers who had responded to the scene began to canvass the immediate neighborhood for a burglary victim. Such a person, the complaining witness in this case, was located and brought to the scene within approximately fifteen minutes of the time that appellants were first stopped. He immediately identified the stereo equipment, as well as a television set subsequently found in the trunk of the automobile, as his. When the robbery victim finally arrived on the scene, he was unable to identify anyone as the perpetrator of the robbery.

Appellants argue that the police officers had neither sufficient articulable suspicions to warrant the initial stop of their automobile under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), nor probable cause to "arrest" them—*i. e.*, to continue the detention while other officers were bringing the robbery victim to the scene and canvassing the immediate vicinity for a burglary victim.

■ *Terry* recognized that police officers are constantly confronted with an infinite variety of situations which may require responses intermediate to formally arresting a suspect and ignoring him. *See Adams v. Williams*, 407 U.S. 143, 145–46, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Upon a given set of circumstances, our review must be directed to whether the police response was reasonably appropriate—whether, in other words, the intrusion of the investigative stop was "reasonably related in scope to the justification for [its] initiation." *Terry v. Ohio, supra* at 29, 88 S.Ct. at 1884. There can be little doubt that the police officers were warranted in making an investigative stop where they were looking for a robbery suspect in the area, had seen Dickerson run into the alley, and had seen Dickerson (with his companions) backing their automobile out of the alley and toward them at a high rate of speed in an apparent attempt to escape the other police officers.[3] Although the lookout description for robbery suspects would not, of itself, have justified a stop,[4] the additional circumstances of apparent flight from lawful authority, first on foot, then by automobile, fully justified the stop. *Compare Campbell v. United States*, D.C. App., 273 A.2d 252 (1971) (mere possession of possible fruits of crime did not warrant investigatory detention) *with Edwards v. United States*, 379 A.2d 976 (D.C.App., 1977) (possession of possible fruits of crime plus flight from authority warranted detention). *See also Tobias v. United States*, D.C.App., 375 A.2d 491, 494 (1977), and cases cited therein (flight as important factor in assessing reasonableness of detention). We conclude that the stop was justified, and the means used here to effectuate the stop are unquestionable.[5] *See United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976) (justified police action may not be thwarted by flight).

■ The issue that remains, therefore, is whether the scope of the intrusion occa-

---

**2.** These statements were not introduced at trial.

**3.** Appellants argue that they were denied their right of confrontation when the trial court declined to permit them to conduct recross-examination on the issue of whether appellants did, in fact, know that the persons in the unmarked car were police officers. Appellants' knowledge, however, is immaterial to the issue of police reasonableness where, as here, there was a sufficient basis for the trial court's conclusion that the police officers reasonably believed appellants to have known that they were police officers.

**4.** The lookout was for two Negro males, one of whose clothing was described. The clothing description did not, in fact, match any of the appellants, but this was not known until after they had been stopped.

**5.** We cannot say that it was unreasonable for police officers to effect a stop at gunpoint where they were on lookout for armed robbers and where appellants drove their car at the police at high speed. One of the officers testified, on cross-examination, that he believed that one of the appellants (not identified) was handcuffed while detained. This fact is likewise constitutionally irrelevant since the person handcuffed was not identified and since the police officers were justified in the detention. The question of the use of handcuffs was simply not a focal point at the hearing.

sioned by the investigative stop was reasonable. In *Terry*, the scope of the intrusion was the brief stop for questioning, followed by a weapons frisk. In the instant case, the scope of the intrusion relates solely to the duration of the detention,[6] approximately fifteen minutes. While prolonged detention will, at some point in time, be the practical equivalent of full arrest, requiring probable cause for its justification, the teaching of *Terry* is that less prolonged detentions may be justified upon less than probable cause. *Terry v. Ohio, supra* (brief detention for questioning); *United States v. Wylie*, 186 U.S.App.D.C. ——, 569 F.2d 62 (No. 76–2005, Nov. 15, 1977) (returning suspect to scene of possible crime during investigation); *Cooper v. United States*, D.C.App., 368 A.2d 554 (1977) (*semble*). Although the lengths of detention in these cases were less than that in the instant case, each was justified by the failure of the initial contact to dispel justified suspicions. *Terry v. Ohio, supra* (further detention for frisk warranted upon failure of suspect to allay fear that he was armed); *United States v. Wylie, supra* (detention warranted when suspect's only means of identification tended to further connect him with possible crime); *Cooper v. United States, supra* (further detention warranted where suspects gave materially different explanations of their activity). Here, also, the suspects failed to dispel the suspicion created by seeing, in addition to their apparent flight from authority, the haphazardly strewn stereo equipment in the automobile. Not only was the suspicion not dispelled, but it was heightened by appellants' disclaimers. We cannot say that the police officers in this case acted unreasonably in maintaining the status quo in order to permit further brief investigation.

Our finding of reasonableness in this instance is premised upon the concurrence of two circumstances. First, the detention lasted only about fifteen minutes, a relatively short period of time in comparison to the detention normally accompanying a formal arrest. Second, the officers limited their investigation to the immediate vicinity of the alley. Within that limitation, the officers could reasonably assume that within a short time their suspicions would be either confirmed or dispelled. This limitation provided a sufficient check to ensure that appellants would not be detained unreasonably long.

## II.

Appellants were found guilty by a jury of burglary, grand larceny, and receiving stolen property. The evidence upon each count was substantially the same: that appellants were found in possession of recently stolen goods in the vicinity of and within, at most, an hour of their theft from an unoccupied apartment. The jury was instructed that this evidence would support each of the three counts, but it was not instructed that appellants could not be convicted of the receiving count in addition to the burglary and larceny counts.

In *Milanovich v. United States*, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961), the petitioner had been convicted of stealing government property and receiving and concealing it. Milanovich had aided and abetted the theft by driving her accomplices to the site of the theft, where she was to await them. For reasons unknown, Milanovich drove away without her accomplices, who later buried the stolen money. She later dug up the money. The Court held that she could be convicted for the theft as an aider and abettor or as a receiver, but not both.[7] Since there was evidence upon which the jury could have found her guilty of either count, the Court refused to speculate as to which of the counts the jury would have convicted had it been properly instructed, and a new trial was ordered.

The government argues, however, that we need not order a new trial in this case

---

6. Appellants' weapons frisk, while an intrusion, produced no evidence. Again, however, the frisk would have been justified under these circumstances. *See* note 5, *supra*.

7. That the three convictions for each appellant in the instant case cannot stand is properly conceded by the government, although it urges that the receiving conviction be vacated.

under the authority of *United States v. Gaddis,* 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976). In *Gaddis* the respondents had been convicted of robbing a federally insured bank and receiving and possessing the funds stolen. The evidence showed that the respondents had entered and robbed the bank; "there was no evidence whatever that they were guilty of receiving the proceeds 'from the robber.'" 424 U.S. at 549, 96 S.Ct. at 1027. The proceeds, in fact, were never found. *Id.* Within this evidence, the jury could not have convicted respondents under the receiving count, and the *Milanovich* mandate was satisfied by the Court's order that that conviction be vacated.

■ The instant case is not one susceptible to the remedy employed in *Gaddis.* Here, there was evidence upon which the jury could have convicted for all counts.[8] In fact, the same evidence—unexplained possession of recently stolen goods—would have tended to support all counts. As in *Milanovich,* we may not speculate as to what a properly instructed jury would have found. While we might be convinced that the temporal and spatial proximity of appellants' possession to the time and place of the burglary and theft clearly reflects appellants' guilt, such circumstantial evidence is for the jury, not the court, to weigh.

### III.

For the reasons expressed in Part II of this opinion, the judgments of conviction are reversed and these cases are remanded to permit a new trial.

*Reversed and remanded.*

---

**8.** Appellant Franklin asserts that the trial court erred in denying his motion for directed verdict of acquittal at the close of the government's case on the grounds that Franklin was not shown to be in exclusive possession of the goods and was not shown to have entered the apartment from which the goods were taken. In view of the evidence in this case, we consider this assertion to be without merit. *See, e. g., Bunter v. United States,* D.C.App., 245 A.2d 839, 842–43 (1968); *Gilbert v. United States,* 94 U.S.App.D.C. 321, 322, 215 F.2d 334, 336 (1954).