NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 19, 2012[*]
Decided November 19, 2012

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-3362

| | |
|---|---|
| MICKEY L. DOOLEY, | Appeal from the United States District |
| *Movant-Appellant*, | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 10-165-GPM |
| | |
| UNITED STATES OF AMERICA, | G. Patrick Murphy, |
| *Respondent-Appellee*. | *Judge*. |

**O R D E R**

Mickey Dooley, a former police officer, appeals from the denial of his motion to vacate his federal convictions arising from the thefts of money and other property from his department's evidence vault. *See* 28 U.S.C. § 2255. Dooley claims that his trial attorney provided ineffective assistance and argues that the district court should have granted him an evidentiary hearing to prove that claim. We affirm the district court's decision.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. The appeal is thus submitted on the brief and the record. *See* Fed. R. App. P. 34(a)(2)(C).

Dooley worked as an evidence custodian for the police department in Alton, Illinois. His responsibilities included securing evidence collected from crime scenes, and he possessed one of the five access cards allowing entry to the vault area. He also was the only employee with keys to the vault and a cash locker inside; the only other copy of each key was kept in the administration wing of the building.

After robberies at two local banks, successful police work led to arrests and recovery of part of the loot. Dooley took possession of the money, and when the FBI later asked for it to use as evidence in a federal prosecution against the robbers, Dooley arranged the transfer. But the FBI soon realized that $39,000 was missing, and Dooley quickly became the focus of investigation when review of video from a vault surveillance camera confirmed that he twice had entered the vault despite the police chief's directive that all personnel stay out while the loss of the money was being investigated. An audit of the vault's contents showed that additional items from other crime scenes, including a laptop computer, also were missing. Investigators confronted Dooley, who at first denied but then admitted stealing the laptop. He would not admit taking the robbery proceeds.

Dooley was charged with lying to investigators, 18 U.S.C. § 1001(a)(2); attempting to conceal evidence, *id.* § 1512(c)(1); disposing of money stolen from a bank, *id.* § 2113(c); misapplication of property by an employee of a federally funded, local government agency, *id.* § 666; wire fraud, *id.* § 1343; and failure to file an income tax return, 26 U.S.C. § 7203. At trial the government established that all of the stolen property was under Dooley's exclusive control as evidence custodian, that his keys to the vault and cash locker were used in the theft, and that the surveillance video showed him inside the vault handling the missing items. The government contended that Dooley was stealing from the vault to fund a gambling habit, and supported that theory with testimony from a casino manager who said that Dooley had lost nearly $50,000 in a single year. The jury returned a guilty verdict on each count, and after we upheld all but the conviction for wire fraud, *United States v. Dooley*, 578 F.3d 582 (7th Cir. 2009), the district court sentenced Dooley to a total of 120 months' imprisonment, with concurrent sentences for the separate counts.

Dooley then filed his § 2255 motion. He principally claimed that his lawyer had been deficient on several fronts, in particular for not arguing that his convictions under § 2113(c) and § 666 were multiplicitous because both were premised on the thefts from the vault of money belonging to the banks. Dooley also accused the government of doctoring the video from the vault surveillance camera as well as misrepresenting his gambling losses. The district court denied the motion without an evidentiary hearing and declined to grant a certificate of appealability. Dooley then applied to this court for a certificate, which we granted but only on the claim of ineffective assistance.

In that order we encouraged the parties to focus on whether counsel was deficient in failing to argue "that Dooley could not be simultaneously convicted of stealing goods and receiving the same stolen goods." Dooley says the answer is yes, and he also contends that his lawyer missed an opportunity to undermine the government's evidence about the amount of his gambling losses.

According to Dooley, his lawyer was deficient in failing to argue that the "bank robbery statute does not authorize separate convictions for one person for feloniously receiving and feloniously taking the same property."[1] When we granted Dooley's application for a certificate of appealability, we did so without benefit of the complete record. And though Dooley's description of his convictions under § 2113(c) and § 666 appeared to raise a question that warranted briefing, a closer look reveals that his characterization of the charged crimes is inaccurate and his legal theory thus untenable.

In *Milanovich v. United States*, 365 U.S. 551 (1961), the decision on which Dooley relies, the Supreme Court held that the defendant could not be twice convicted and sentenced under 18 U.S.C. § 641 for helping to transport burglars to a military commissary and then later receiving part of what they stole. The government theorized that the defendant was guilty of the theft as an accessory, and also guilty of receiving and concealing loot from that same theft. In rejecting this view, the Court concluded that Congress had not intended § 641 to allow for separate sentences based on the conversion of the same property. *Id*. at 551–54. That decision followed *Heflin v. United States*, 358 U.S. 415 (1959), which holds that a bank robber cannot be sentenced under § 2113(a) for committing the robbery and then sentenced a second time under § 2113(c) for receiving the proceeds of the same robbery. We have understood these decisions as relating to the doctrine of merger and suggested that, as a norm of federal criminal law, "[n]o matter how many statutes a person violates when preparing to commit a robbery, actually committing it, and handling the loot, only one sentence is appropriate." *United States v. Loniello*, 610 F.3d 488, 495–96 (7th Cir. 2010) (explaining *Milanovich* and *Heflin*).

---

[1]Dooley also asserts that counsel was deficient in failing to argue that his conviction under § 1512(c)(1) for attempting to conceal evidence likewise is multiplicitous when viewed alongside his convictions for disposing of the robbery proceeds and for misapplication of property in the custody of the police department. But this claim was not presented to the district court, and thus is waived. *See Wyatt v. United States*, 574 F.3d 455, 459 (7th Cir. 2009); *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003). We note, however, that the concealed evidence underlying the § 1512(c)(1) conviction is the laptop computer, not the money stolen from the banks, so this claim would have failed even if Dooley had preserved and developed it.

Dooley's case is different. In *Milanovich* the defendant was convicted and separately sentenced both for "stealing" from the commissary and also for "receiving" what was stolen. In contrast, Dooley was convicted under § 2113(c) for "disposing" of money stolen during bank robberies that were committed by others without his knowledge or involvement, and under § 666 for misapplying funds in the care of his federally funded, local employer. The former statute deals with receiving money that another person had stolen from a bank, *see United States v. Gaddis*, 424 U.S. 544, 547–48 (1976); *Loniello*, 610 F.3d at 495, whereas the latter concerns public corruption, *see United States v. Thompson*, 484 F.3d 877, 881 (7th Cir. 2007). Spending money from a bank heist does not merge into misappropriating evidence from a police vault, even if that evidence happens to be the bank's missing money. So there is no basis to conclude that counsel's performance was deficient. In any event, Dooley's sentences effectively *do* merge because he is serving them concurrently; that his lawyer refrained from making a multiplicity claim thus caused no prejudice, *see Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pole v. Randolph*, 570 F.3d 922, 934 (7th Cir. 2009).

Dooley's other criticism of counsel is that he never objected to the use of casino records which, according to the government, show losses of nearly $50,000. Dooley asserts that those records also establish that he won over $57,000 in jackpots during that year, so he could not have come out behind, and thus his lawyer missed an opportunity to disprove the government's theory of motive for the crimes. But Dooley misstates the evidence. The casino's accounting manager did not testify that Dooley lost $50,000 in individual bets. Instead, she accounted for Dooley's winnings by testifying that, "at the end of the day, the casino was ahead $48,424.95." Once again, there is no basis to conclude that counsel's performance was deficient, and neither was an evidentiary hearing needed before drawing that conclusion. *See Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006).

Finally, Dooley argues that the district court erred by concluding that he failed to substantiate his accusations that the government used fraudulent evidence to secure his convictions. But this contention is outside the scope of our certificate of appealibility, and so we decline to review it. *See* 28 U.S.C. § 2253(c)(3); *Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011); *Rodriguez v. Scillia*, 193 F.3d 913, 920 (7th Cir. 1999).

AFFIRMED.